(101 South. 549)

No. 25366.

## WILSON v. LOWRIE (OIL CITY IRON WORKS, Intervener).

(June 20, 1924. Rehearing Denied Sept. 25, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Chattel mortgages** ⊙⇒89—**Effective against third persons without notice only while property situated in parish where mortgage recorded.**

Under Act No. 198 of 1918, p. 372, § 2, chattel mortgage as against third persons without notice affects property only while situated in parish where mortgage has been recorded.

2. **Chattel mortgages** ⊙⇒89 — **Property purchased by judgment debtor in parish where mortgage covering it not recorded held to go to judgment creditor unincumbered.**

Where property of judgment debtor seized by sheriff had been purchased by such debtor in parish where chattel mortgage covering it was not recorded, it passed into hands of sheriff unincumbered and free from mortgage.

**3. Sales ⬥⟿313 — Seller held not entitled to privilege on property after it passed into hands of person other than buyer.**

Where, after chattel was allowed to pass into hands of third person, it was there seized by judgment creditor, *held* vendor was not entitled to assert his lien or privilege against such creditor, nor could judgment debtor be held substituted vendee in absence of showing of specific agreement to that effect between him and original parties to sale.

Rogers, J., dissenting in part.

Appeal from Seventh Judicial District Court, Parish of Richland; John R. McIntosh, Judge.

Action by John Wilson against John J. Lowrie wherein the Oil City Iron Works intervened. From judgment partly for plaintiff and partly for intervener or third opponent, the latter appeals. Affirmed.

Gilmer & Cousin, of Shreveport, for appellant.

Ellis & Ellis, of Rayville, for appellee.

By the WHOLE COURT.

LECHE, J. Plaintiff, having obtained a judgment against defendant, seized an oil drilling outfit, together with other movable effects used in connection therewith, as the property of defendant. Thereupon the Oil City Iron Works intervened in the suit and filed a third opposition, claimed ownership of the property, and, in the alternative and in the event its ownership was not recognized, it prayed that its rights as mortgagee and its privilege as vendor of the seized property be declared superior in rank to the claim of plaintiff, and that it be paid by privilege and by preference over plaintiff out of the proceeds of sale of the property.

From a judgment partly in favor of plaintiff and partly in favor of third opponent the latter has appealed.

The only contest in this court is whether a chattel mortgage in favor of third opponent on 1,500 feet of 4-inch pipe is valid and binding, and whether third opponent is entitled to a vendor's lien and privilege on 600 feet of 6-inch pipe, all of said pipe, measuring 2,100 feet, being part of the property seized by plaintiff.

The apparent inconsistency in third opponent's claim for the ownership of the property and, in the alternative, for the recognition of mortgage and privilege rights thereon does not seem to have been taken advantage of by plaintiff, and the case was decided in the lower court and presented in this court as if the claim of ownership had been abandoned, and we will assume that it has for the purpose of this opinion.

1. The 1,500 feet of 4-inch pipe was sold by third opponent as part of a drilling outfit to Martin & Long, a copartnership engaged in drilling oil wells and operating under the firm name of "the Oil Well Drilling Company." The drilling outfit, including the 1,500 feet of pipe, was mortgaged by the vendee to the vendor. It had been delivered by the vendor to the vendee at Arcadia in the parish of Bienville, and the act of mortgage was inscribed in the proper records in Caddo parish, the domicile of the vendor, and also in the parish of Bienville, where delivery was made.

Subsequently the 1,500 feet of pipe was removed from the parish of Bienville to Delhi in the parish of Richland, where it became the property of John J. Lowrie. The act of mortgage was not recorded in the parish of Richland, and the first question presented for decision is whether the mortgage still affected the property after its removal from the parish of Bienville into the parish of Richland.

[1] Our opinion is that according to the provisions of the statute a chattel mortgage only affects property while such property is situated within the parish in which the mortgage has been recorded. To hold otherwise would be to impose upon every purchaser of mortgageable movables the duty to

search the records of every parish in the state before he could safely acquire an incumbered title to the same.

The statute (Act 198, p. 372, of 1918) provides in section 2 that, in order to affect third persons without notice, the act evidencing the mortgage shall be recorded in the office of the recorder of mortgages in the parish where the property shall then be situated, and also in the parish in which the mortgagor resides. Section 5 provides that the mortgagor shall not move the property mortgaged from the parish where said mortgage is given without the written consent of the mortgagee designating the parish or parishes to which same may be taken, and to preserve such mortgage against third persons in such cases it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted.

It is thus as clear as language can make it that the mortgage does not follow the property when the property is removed into a parish in which the mortgage has not been recorded. The language immediately following in the same section accentuates this construction of the law by penalizing a purchaser in the amount of the debt due the creditor when he purchases a mortgageable movable without requiring from a nonresident owner and vendor an affidavit that there is no mortgage on the property nor any money due for the purchase price thereof. If the mortgage followed the property, there would be no necessity for this penalty, as the property would pass into the hands of the purchaser incumbered with the mortgage.

[2] We are therefore of the opinion that the 1,500 feet of 4-inch pipe, when seized by the sheriff as the property of Lowrie, was unincumbered, and passed into the hands of the sheriff free of the chattel mortgage under which third opponent bases its claim.

[3] 2. The vendor's lien and privilege claimed by third opponent on the drilling machinery, and especially on the 600 feet of 6-inch pipe, was, in our opinion, lost when the pipe was seized in the hands of Lowrie.

It is admitted that the 6-inch pipe was sold by third opponent to Long, or to Martin & Long, or to the Oil Drilling Company, apparently the same concern. Of course, as long as the pipe was owned and possessed by that vendee, it was affected under the law with third opponent's vendor's lien and privilege, but the moment it passed into the hands of Lowrie as the latter's property that privilege ceased. This is not disputed by third opponent, but opponent contends that, its original vendee being unable to pay the purchase price, Lowrie was substituted as its vendee with the same effect as if Lowrie has been the original purchaser. The evidence does not sustain this contention. In order to substitute Lowrie as a vendee, it would have been necessary that all three of the parties consent to the transaction, that the pipe be returned by Long, or Long & Martin, to third opponent, and that third opponent make a direct sale to Lowrie. Not only did the parties fail to do this, but it is shown that third opponent refused to sell directly to Lowrie, as it lacked confidence in Lowrie's financial responsibility.

The judgment of the district court maintaining plaintiff's prior rights on the 1,500 feet of 4-inch pipe and on the 600 feet of 6-inch pipe is correct and should be affirmed, and for the reasons stated.

It is so ordered.

ROGERS, J. I respectfully dissent from that part of the majority opinion which holds that the 1,500 feet of 4-inch drill pipe passed into the hands of the sheriff, when seized by him as the property of defendant, unincumbered and free from opponent's chattel mortgage.

As stated in the majority opinion, this pipe was included in a drilling outfit sold by the

third opponent to Martin & Long, a copartnership engaged in drilling oil wells and operating under the name of the "Oil Well Drilling Company" A chattel mortgage was retained and executed in due form. At the time of the transaction the purchasers were residents of the town of Arcadia, in the parish of Bienville, and the vendor was located in the city of Shreveport, in the parish of Caddo. The property sold was shipped from Shreveport to Arcadia, and the chattel mortgage was placed of record in both parishes. Subsequently the 1,500 feet of 4-inch pipe was removed from Arcadia to Delhi, in the parish of Richland, without the knowledge or consent of the vendor, where it became the property of the defendant.

The contention of plaintiff and appellee is that the chattel mortgage of third opponent was lost, because of the failure of the mortgagee to record the act in the parish of Richland. This contention is maintained by the majority opinion. Since the opponent had no knowledge of the removal of the property, it is clear that no opportunity was afforded him of procuring the recordation of the chattel mortgage in the records of the parish to which it was removed.

This is the first time this question has been presented to this court. It has been, however, before the courts of last resort in many of the other states which have uniformly held that a new recordation is not required to maintain the validity of a chattel mortgage against third parties when the mortgaged property is removed without the knowledge or consent of the mortgagee.

The Chattel Mortgage Law (Act No. 198 of 1918), at page 372, § 2, reads in part as follows:

"In order to affect third persons without notice, said instrument must be passed by notarial act and the original or a certified copy thereof shall be recorded in the office of the recorder of mortgages in the parish where the property shall then be situated, and also in the parish in which the mortgagor is a resident."

And in section 5 the statute further provides:

"That the mortgagor shall not move the property mortgaged from the parish where said mortgage is given *without the written* consent of the mortgagee designating the parish or parishes to which same may be taken, and to preserve such mortgage against third persons in such cases, it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted." (Writer's italics.)

The case of National Bank of Commerce v. Ben Jones, 18 Okl. 555, 91 Pac. 191, 12 L. R. A. (N. S.) 310, 11 Ann. Cas. 1041, is directly in point. The reasons advanced by the court in support of its conclusions are sound and commend themselves to favorable consideration. I quote from the opinion as follows:

"It is said in the brief that the trial court held that the bank had lost its lien by a failure to have the mortgage filed for record in the office of the register of deeds of Pawnee county after the horse was removed from Payne county. Such is not the law. When the owner of the horse, who resided and kept the horse in Payne county, executed a mortgage upon the horse, and it was duly filed for record in such county, the mortgage lien became effective against all persons who subsequently dealt with the property, *and a removal of the property by the mortgagor without the consent or connivance of the mortgagee would not affect the validity of the mortgage lien.* It is said in Jones on Chattel Mortgages, § 260: 'The removal of a mortgagor from the town or county in which he resided when the mortgage was executed, and where it was duly recorded, and the taking of the mortgaged property with him, does not invalidate the record of the mortgage, or necessitate the recording of it again in the town or county to which he has removed. The object in requiring a record of the mortgage is to give publicity to it, and to provide a source of information common to all persons, so that they may determine, with some degree of facility, convenience, and certainty, the question of title to the property whenever they may be interested to know it, while at the same time it is not among the purposes of the recording

acts to subject a bona fide mortgagee to the inconvenience of the constant vigilance and ceaseless watching which would be requisite to guard and secure his interests if he were obliged to record his mortgage in every town into which the mortgagor might see fit to remove with the property. If he were required to do this, his security would be well nigh worthless; for before he could do this a creditor of the mortgagor might seize the property by process of law or the mortgagor himself might pass the title to it by way of sale to an innocent purchaser.'" (Writer's italics.)

See, also, Turpin v. Cunningham, 127 N. C. 508, 37 S. E. 453, 51 L. R. A. 800, 80 Am. St. Rep. 808; Kanaga v. Taylor, 7 Ohio St. 134, 70 Am. Dec. 62; Spikes v. Brown (Tex. Civ. App.) 49 S. W. 725; Vickers v. Carnohan (Tex. Civ. App.) 23 S. W. 338, to the same effect.

In the case at bar the chattel mortgage was recorded in the mortgage records of the parish of Caddo, where the property was situated at the time, and it was also recorded in the mortgage records of the parish of Bienville, where the mortgagors resided. The requirements of the statute in regard to recordation were thus complied with. The mortgagee had done all that the law demanded it should do. Notice of the incumbrance was thereafter conveyed to all other persons who might desire to interest themselves, either as purchasers or lienors, in the same property. The removal of the mortgaged property without the knowledge or consent of the mortgagee did not, and could not, divest him of his rights therein, nor cause him to lose his lien and privilege because of the seizure of said property at the instance of creditors asserting liens and privileges arising subsequently thereto.

The majority opinion holds that a chattel mortgage only affects property while it is situated within the confines of the parish in which the mortgage has been recorded. "To hold otherwise," says the opinion, "would be to impose upon every purchaser of mortgageable movables the duty to search the records of every parish in the state before he could safely acquire an unincumbered title to the same."

I am unable to admit the correctness of this argument. The statutory requirement as to notice is fulfilled when the mortgage is recorded in the parish where the mortgagor resides and in the parish where the property is situated. Parties dealing with movables are easily enabled to ascertain their status by examining the records of the parish of the mortgagors' residence or of the place where the property was originally situated. The view expressed in the majority opinion transfers the burden of vigilance from the party dealing with movables to the chattel mortgage holder, requiring ceaseless watching on his part to ascertain the various removals of the mortgaged property in order to procure the recordation of the mortgage in every parish to which such removals take place. In these circumstances the mortgage security becomes of little or no value, and the effect of the chattel mortgage statute is seriously impaired, if not entirely destroyed.

The provision in section 5 of the act requiring a resident of a parish to require an affidavit from a nonresident that the movable property with which he is dealing is free from incumbrances and that nothing is due for the price thereof is merely an added protection given to the chattel mortgage holder. As I view it, the purpose of the provision is to prevent or at least to restrict the owner of movable property subject to a chattel mortgage from incumbering or selling the same by requiring the person with whom he is dealing to exact the affidavit referred to, which, if falsely taken, will subject the affiant to the penalty prescribed by law for the commission of the crime of perjury.

For these reasons I am of the opinion that the lien, privilege, and chattel mortgage of the third opponent should be recognized and enforced against the 1,500 feet of 4-inch drill pipe and the proceeds of the sale thereof.