(107 So. 705)

No. 27626.

**GULF FINANCE & SECURITIES CO. v. TAYLOR (LEVY, Intervener).**

**In re GULF FINANCE & SECURITIES CO.**

(Feb. 1, 1926. Rehearing Denied March 29, 1926.)

*(Syllabus by Editorial Staff.)*

I. Chattel mortgages ⊕═89.

Under Act No. 198 of 1918, §§ 2, 4, 5, and 8, a chattel mortgage as against third persons, without notice, affects property only while it is situated in parish where mortgage has been recorded.

2. Chattel mortgages ⊕═89—Innocent purchaser of mortgaged property in parish where mortgage was not recorded held to receive title unincumbered, though property was removed to such parish without consent of mortgagee (Act No. 198 of 1918, §§ 2, 4, 5, and 8).

Where chattel mortgage on automobile was properly recorded in parish where mortgage was given, but mortgagor, without consent of mortgagee, took automobile into another parish where mortgage was unrecorded, and where it was seized under attachment and sold to innocent purchaser, *held* that such innocent purchaser acquired title unincumbered, in view of Act No. 198 of 1918, §§ 2, 4, 5, and 8.

Rogers, J., dissenting.

Certiorari to Court of Appeal, Parish of St. Tammany.

Executory proceeding by the Gulf Finance & Securities Company against George B. Taylor, wherein Lazard J. Levy filed an intervention or third opposition. Judgment for Lazard J. Levy on trial of the opposition was affirmed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Affirmed.

Cline & Plauche, of Lake Charles, Dufour, Goldberg & Kammer, Legier, McEnerny & Waguespack, and Milling, Godchaux, Saal & Milling, all of New Orleans, Sanders & Gottlieb, of Baton Rouge, Spearing, Miller & Mabry, of New Orleans, Thigpen, Herold,

Lee & Cousin, of Shreveport, and Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for applicant.

L. V. Cooley, Jr., of Slidell, for intervener.

O'NIELL, C. J. [1, 2] The question in this case is whether a chattel mortgage, which was properly recorded in the parish where the property was when the mortgage was given, and in the parish where the mortgagor resided, remains effective when the property is moved by the mortgagor into another parish, without the knowledge or consent of the mortgagee, and without registry of the mortgage in the parish into which the property is moved, and is there sold to an innocent third person, without knowledge of the mortgage. Under those circumstances exactly, in Wilson v. Lowrie, 101 So. 549, 156 La. 1062, we held that the chattel mortgage had no effect, without being recorded in the parish into which the property was moved by the mortgagor without the knowledge or consent of the mortgagee. The district judge decided the same way in this case, and his judgment was affirmed by the Court of Appeal. We issued a writ of review, at the instance of the holder of the chattel mortgage, to consider the question again, because of the general importance and far-reaching effect of our ruling in Wilson v. Lowrie.

There is no dispute about the facts of this case. George B. Taylor, being the owner of a Ford truck, gave a chattel mortgage on it in favor of the Gulf Finance & Securities Company to secure a debt that he owed the company. The mortgage was given by notarial act, in New Orleans, where Taylor resided and where the truck was, and the instrument was promptly recorded there. It contained a covenant that the mortgagor would not move the truck out of the parish without the written consent of the mortgagee. Subsequently, without the consent or knowledge of the mortgagee, Taylor took the truck into the parish of St. Tammany, where

it was seized under a writ of attachment at the instance of another creditor of Taylor, and was sold by the constable, at public auction, to Lazard J. Levy, without knowledge of the chattel mortgage. Thereafter the Gulf Finance & Securities Company learned that the truck had been moved to the parish of St. Tammany, and immediately had it seized in executory proceedings on the chattel mortgage. Levy filed an intervention or third opposition in the executory proceedings, claiming that the title had passed to him free from the chattel mortgage, because it was not recorded in the parish where the truck was seized and sold. On trial of the opposition, the district court, as we have said, gave judgment for Levy, which was affirmed by the Court of Appeal.

The Chattel Mortgage Law is the Act 198 of 1918, p. 372. The provisions that aid in solving the question before us are in sections 2, 4, 5, and 8, viz.:

"In order to affect third persons without notice, said instrument must be passed by notarial act and the original or a certified copy thereof shall be recorded in the office of the recorder of mortgages in the parish where the property shall then be situated, and also in the parish in which the mortgagor is a resident."

" * * * Every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto."

" * * * The mortgagor shall not move the property mortgaged from the parish where said mortgage is given without the written consent of the mortgagee designating the parish or parishes to which same may be taken, and to preserve such mortgage against third persons in such cases, it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted. It shall be unlawful for a resident of any parish to purchase the movable property described in section 1 [meaning movable property of any of the classes specified as chattels that may be mortgaged] from any nonresident of such parish, without first obtaining an affidavit from the non-resident that there is no mortgage on the property, nor any money

due for the purchase price thereof; and the purchaser who shall buy the above referred to movable property, without having obtained the said affidavit, shall be liable to the creditor for the debt secured by the property."

" * * * Any owner or other person who shall sell or dispose of property mortgaged under this act with fraudulent intent to defeat said mortgage, or shall remove same from where so mortgaged to another parish, without complying with the provisions of this act, or shall remove same out of said parish without the written consent of said mortgagee, shall be deemed guilty of a misdemeanor, and on conviction shall be fined in a sum not exceeding five hundred dollars ($500.00), or be imprisoned not exceeding twelve months, or both, at the discretion of the court."

" * * * And in case the mortgagor shall be guilty of any of the fraudulent practices denounced by this section, the mortgage shall forthwith mature and become due and payable, and the mortgagee shall be entitled to enforce the collection of the debt secured by the mortgage immediately in the manner hereinafter provided."

It is true that, by having the mortgage evidenced by a notarial act, and by having the act recorded in the parish where the mortgagor resided and where the mortgaged property was, the mortgagee did all that the statute required for the mortgage "to affect third persons without notice"; but the subsequent provisions of the statute, which we have quoted, indicated to us, when we were considering the case of Wilson v. Lowrie, 101 So. 549, 156 La. 1062, that, when the mortgagor had moved the property into another parish without the consent of the mortgagee, the mortgage did not there "affect third persons without notice."

The learned counsel for the mortgagee rely particularly upon the declaration in the second paragraph that we have quoted that the filing of a chattel mortgage for record in the office of the recorder of mortgages "shall be notice to all parties of the existence of such mortgage." Our opinion is that the declaration means merely that the notice to third persons shall have effect, not only from the time when the instrument is actual-

ly recorded, but from the time when it is filed for record. That is explained by the context, because, in section 3, immediately preceding the declaration which we have quoted, it is made the duty of the recorder, on receiving a chattel mortgage for record, to note thereon the date, hour and minute of receiving it. The declaration that the filing of the instrument for record shall be notice "to all parties," which, of course, includes parties outside as well as inside of the parish, has nothing to do with the question as to what shall be the effect of a removal of the mortgaged property out of the parish without the consent of the mortgagee.

Quoting the doctrine, Inclusio unius est exclusio alterius, the learned counsel for the mortgagee argue very forcibly the inference that, by requiring the mortgagee to have a copy of his mortgage recorded in the parish to which he consents that the property may be removed—when he consents to a removal to another parish—the Legislature intended that the mortgagee should not be required to have a copy of his mortgage recorded in such other parish, "to preserve such mortgage against third persons," if 'the removal into another parish was without the consent of the mortgagee. Of course, the Legislature did not intend to require, the mortgagee to do what would be impossible; that is, to have a copy of the act of mortgage recorded in a parish where the mortgaged property has been moved without the mortgagee's knowledge or consent. That is why the Legislature made it a misdemeanor, punishable by fine and imprisonment, for a mortgagor to move the mortgaged property from the parish where the mortgage is given, without the written consent of the mortgagee. Why should it be a misdemeanor for the mortgagor to move the mortgaged property out of the parish without the written consent of the mortgagee, if the mortgagee's lien is not affected by the moving of the property out of the parish without his con-

sent? And why should it be more necessary, "to preserve such mortgage against third persons in such cases," that the mortgage should be recorded in the parish into which the property is moved if it be moved with the consent of the mortgagee, than it would be if it were moved without his consent? The mortgagee's consent has nothing to do with the matter of giving notice to third persons. It seems to us that the reason why the Legislature has required the mortgagee to have his mortgage recorded in the parish into which the mortgaged property is removed with his consent, but does not require him to have his mortgage recorded in the parish into which the property is removed without his consent, is that, in the one case it is possible and in the other it is impossible for mortgagee to protect his mortgage in that way.

The learned counsel for the mortgagee argue that the requirement in the statute that the mortgage shall be recorded in the parish where the mortgagor resides is a vain and futile requirement if it does not give notice in a parish into which the property is moved without the mortgagee's consent. By the same token, the learned counsel for the opponent, Levy, argues that the requirement of the statute that the mortgage shall be recorded in the parish where the property is when the mortgage is given is a vain and futile requirement if the registry in the parish where the mortgagor resides is a sufficient notice to everybody—hic et ubique.

The declaration in the statute that it shall be unlawful for a resident of any parish to buy from a nonresident of the parish any such movable property as is subject to being mortgaged, without first obtaining an affidavit from the nonresident that there is no mortgage on the property, and the declaration that a violation of the law in that respect shall make the purchaser personally liable for any debt secured by a mortgage

on the property, indicates that the idea of the Legislature was that the title to the property, in such case, would pass free from any mortgage not recorded in the parish where the property was at the time of the sale.

The declaration that any person who shall sell mortgaged property with a fraudulent intent to defeat the mortgage shall be guilty of a misdemeanor must have reference, particularly if not only, to a sale made in a parish where the mortgage is not recorded, because a sale made at the situs of the property, in the parish where the mortgage is recorded, could not be made with the intent to defeat the mortgage.

We do not find any expression in the Act 198 of 1918 to convince us that our interpretation of it, in Wilson v. Lowrie, 101 So. 549, 156 La. 1062, was wrong; on the contrary, every provision that sheds any light upon the question indicates that our interpretation of the statute is correct. We refer to the requirement that, if the mortgagee consents to a removal of the property from the parish where it is mortgaged, he must, in order to preserve the mortgage against third persons, record a copy of the act in the parish to which he consents that the property may be removed, the provision making it a misdemeanor for the mortgagor to remove the property out of the parish without the mortgagee's consent, and the declaration that it shall be unlawful for a resident of any parish to buy movable property (such as may be mortgaged) from a nonresident of the parish without first obtaining from him an affidavit that there is no mortgage on the property. Instead of those provisions, which were evidently made to protect the mortgagee, the Legislature would very likely have said, if it had intended, that a chattel mortgage, when recorded at the domicile of the mortgagor and at the situs of the property when the mortgage was granted, should have effect against third persons in any parish to which the property might be removed, whether with or without the mortgagee's consent.

The decisions of the courts of other states on this subject are not controlling, because the provisions of the statutes of the other states, as far as we know, may be different from the Louisiana law. Besides, the law allowing the mortgaging of chattels is an innovation in Louisiana. The first chattel mortgage law in this state was the Act 65 of 1912, which allowed the mortgaging of lumber, logs, and live stock, but no other kind of chattels. By the Act 155 of 1914, Act 18 Ex. Sess. of 1915, Act 151 of 1916 and Act 198 of 1918, the right to mortgage chattels has been gradually extended so as to include many classes of movable property, specifically enumerated in section 1 of the act of 1918, "and all other movable property not specifically named herein." The policy of the law, originally, was opposed to the hypothecating of movable property, except by delivery in pledge, and the departure from that policy has been reluctant. There is no reason to presume that the Legislature intended to hamper the buying and selling of movable property to any greater extent than the Legislature has expressed itself.

Above all of the foregoing considerations, we must bear in mind that the public has relied upon our ruling in Wilson v. Lowrie, 101 So. 549, 156 La. 1062, in which a rehearing was refused in September, 1924. If the ruling is not in accord with the intention of the Legislature, it is better that that body should make the change.

The judgment of the Court of Appeal is affirmed.

ROGERS, J., dissents.