No. 4041

Second Circuit

—

KRIVOS v. SIMMONS ET AL.

—

(May 20, 1931. Opinion and Decree.)

—

George Wesley Smith, of Rayville, attorney for plaintiff, appellant.

W. D. Cotton, of Rayville, attorney for defendants, appellees.

McGREGOR, J. Smith Flour and Feed Company, engaged in a mercantile business at Delhi in Richland parish, secured a judgment against Roy Simmons in Madison parish in the Sixth District Court. Mrs. Birdie Krivos, a resident of the state of Mississippi, is the holder and owner of a chattel mortgage note for $500, executed and granted by the said Roy Simmons on a Chevrolet coupe owned by him in Madison parish. This chattel mortgage is in perfect legal form and was duly recorded in the chattel mortgage records of Madison parish. In an effort to collect its judgment, Smith Flour and Feed Company secured a writ of fieri facias in Mad-

ison parish and had the sheriff to seize this automobile. After this seizure, and upon an investigation of the chattel mortgage records of Madison parish, it was discovered that plaintiff in this suit, Mrs. Birdie Krivos, held a duly recorded chattel mortgage against the Simmons automobile as above stated. There was nothing to do but to promptly release the car from seizure. Subsequently, Smith Flour & Feed Company had the clerk of the Sixth District Court in Madison parish issue an alias writ of fieri facias addressed and sent to the sheriff of Richland parish in the Fifth District Court. After receiving this writ, the sheriff of Richland parish was informed that the defendant, Roy Simmons, was in the town of Delhi with the automobile, and he promptly seized it under the writ in his hands. The seizure is recognized as legal and valid by all parties concerned and no attack has been made on it. As soon as Mrs. Krivos, the holder of the chattel mortgage in Madison Parish, learned that the automobile had been seized in Richland parish she employed counsel at once to take the necessary steps to protect her interest and to have her lien on the automobile recognized as superior to that of the Smith Flour & Feed Company. She had a certified copy of her chattel mortgage sent to Richland parish and recorded in the chattel mortgage records in the courthouse at Rayville in the Fifth District Court. A suit was then filed by her at Rayville in the Fifth District Court in which Smith Flour & Feed Company, Roy Simmons and the sheriff of Richland parish were made defendants.

The chattel mortgage note was past due and unpaid at the time of the seizure of the automobile in Richland parish.

Plaintiff's petition sets forth the facts of the chattel mortgage and the seizure of the automobile practically as we have stated them. It is alleged that the defendant, the Smith Flour & Feed Company, had actual knowledge of the existence of the chattel mortgage and of its recordation in Madison parish, and that because of this knowledge it was bad faith on its part to seize the automobile in Richland parish where it had not been protected by the recordation of a copy of the chattel mortgage. The legality of the seizure is not attacked. On the contrary it is recognized as being valid, for the object of the suit is to have plaintiff's chattel mortgage lien recognized as being superior to defendant's lien arising out of the seizure under the writ of fieri facias. Plaintiff prays that the sheriff be ordered to retain in his possession out of the proceeds of the sale of the automobile under the writ of fieri facias issued out of the Sixth District Court of Madison parish, a sufficient amount to pay and satisfy her debt of $500, with interest and attorney's fees and costs of court. She prays further that upon final trial of the case in the Fifth District Court in Richland parish there be judgment in her favor, recognizing and decreeing her lien and privilege by virtue of her chattel mortgage to be superior in rank to any lien and privilege on the said automobile arising from the seizure under the writ of fi. fa. issued out of the Sixth District Court of Madison parish. The suit was brought in the form of a third opposition and an order was signed by the clerk of the Fifth District Court of Richland parish allowing it to be filed and served as such and directing the sheriff to hold in his hands out of the proceeds of the sale of the automobile the sum of $500 with interest, attorney's fees and costs. All the

defendants waive citation and acknowledge service of the suit. An exception of no cause or right of action was filed by Smith Flour & Feed Company. This exception was sustained by the lower court and from this judgment the plaintiff is prosecuting this appeal.

The law, Code of Practice, art. 397, provides that third oppositions "must be made before the court which has granted the order of seizure," but no objection was raised by any one on account of the suit being brought in the Fifth District Court of Richland parish instead of in the Sixth District Court of Madison parish. The exception of no cause or right of action is leveled at the fact that the seizure under the writ of fi. fa. was made prior to the recordation of a copy of the chattel mortgage in Richland parish, and that, therefore, taking the petition as true, the plaintiff's lien by virtue of her chattel mortgage is inferior to the lien arising from the prior seizure. Plaintiff and appellant cites us to no law or authorities to substantiate her position. It is her contention that Smith Flour & Feed Company knew that she had a chattel mortgage on the seized automobile in Madison parish, and that because of that knowledge it was precluded from seizing it anywhere outside of that parish. Counsel for plaintiff stresses the fact that section 2 of Act No. 198 of 1918 (the chattel mortgage law) provides that:

"In order to affect **third persons without notice**, said instrument must be passed by notarial act and the original or a certified copy thereof, shall be recorded in the office of the Recorder of Mortgages in the parish in which the mortgagor is a resident." (Boldface type ours.)

Counsel's position in its final analysis is that, if a third person has information that a chattel mortgage has been executed in a given parish, he is bound by it, even though it may not be a notarial act and may not have been recorded at all. Section 2 of the act must be read and interpreted in connection with section 4 of the same act, and also with Act No. 215 of 1910 (the registry act). Section 4 of the chattel mortgage law plainly provides that in order for a chattel mortgage to have any effect whatever as a lien it must be filed for recordation. So that the most that section 2 of the act can mean is that if, through error or inadvertence, the act which purports to be a chattel mortgage is not a notarial act but is recorded, a person who had actual knowledge of the intent and effort to grant a chattel mortgage could not take advantage of the fact that the act was defective as a notarial act. Anybody else could take advantage of this fact and defeat the lien. In addition to the provision of section 4 of the chattel mortgage act, Act No. 215 of 1910 (the registry act) provides that all acts or instruments of writing which import mortgage or privilege shall be effective from the date of filing for record. In the case of Booth Motor Company, Inc., v. Gamburg, 9 La. App. 60, 118 So. 854, 855, this court said:

"The benefits to accrue under the chattel mortgage law do not come into existence unless and until the act of mortgage is filed for record."

It has been definitely held that Act No. 215 of 1910 (the registry act), applies equally to chattel mortgages as to other acts. Where the recordation of any act is necessary to give it life its existence before recordation can have no effect whatever, regardless of anyone's knowledge of it. A may sell his property to B, and if

B is negligent about having his deed recorded, A may again sell it to C and C's title will be perfect if he records it first, even though he may have known all about the transaction with B. The same thing is true of mortgages, both chattel and real. Failure to record is fatal in all cases. In the case of Soniat v. Whitmer, 141 La. 235, 74 So. 916, 917, the court said:

"* * * the once vexatious question of whether the purchaser of real estate can be affected by unrecorded claims against the property, even though at the time of the purchase he had actual knowledge of them, has been settled in the negative— let us hope forever."

It is admitted that the chattel mortgage in question was in full force and effect in Madison parish. We have discussed it as fully as we have with reference to its original execution and recordation in that parish because of plaintiff's dependence upon the expression in section 2 of the chattel mortgage act with reference to the effect of a chattel mortgage on third persons without notice. It is apparent that section 2 deals only with the mortgage and its effect in the parish where the property is situated at the time of its execution and in the parish in which the mortgagor is a resident. So that all reference to third persons without notice in section 2 must apply to third persons either in the parish in which the property is situated or in the parish in which the mortgagor is a resident. As to its effect in other parishes we must look to section 5 of the act, which provides:

"* * * and to preserve such mortgage against third persons in such cases, it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted."

In the case of Wilson v. Lowrie, 156 La. 1062, 101 So. 549, 550, the Supreme Court said:

"Section 5 provides that the mortgagor shall not move the property mortgaged from the parish where said mortgage is given without the written consent of the mortgagee designating the parish or parishes to which same may be taken, and to preserve such mortgage against third persons in such cases it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted.

"It is thus as clear as language can make it that the mortgage does not follow the property when the property is removed into a parish in which the mortgage has not been recorded." (Boldface type ours.)

Now, it is conceded that plaintiff's chattel mortgage was recorded in Richland parish, after the automobile had been seized and advertised for sale under the writ of fieri facias issued out of the Sixth District Court of Madison parish. Under the wording of the citation from the case of Wilson v. Lowrie, quoted above, her mortgage did not follow the automobile wherever it went from parish to parish. While it was in Richland parish it was free from the execution of a chattel mortgage in Madison parish. We have just seen that the mortgage could have no effect as a lien, even in Madison parish, before the recordation, regardless of anyone's knowledge or notice, and since the recordation in Madison parish can have no extraterritorial effect, and since the mortgage does not follow the automobile out of a parish, it must be held that the mortgage, although recorded in Madison parish, can have no effect in Richland parish, regardless of anyone's knowledge of the same. It might be that if the act failed in its notarial character, but was

recorded in Richland parish before the seizure, the seizing creditor would fail if he had actual knowledge of the intent of the parties to execute a chattel mortgage.

Section 5 of the chattel mortgage act provides:

"It shall be unlawful for a resident of any parish to purchase the movable property described in Section 1 from any non-resident of such parish, without first obtaining an affidavit from the non-resident that there is no mortgage on the property, nor any money due for the purchase price thereof; and the purchaser, who shall buy the above referred to movable property, without having obtained the said affidavit, shall be liable to the creditor for the debt secured by the property."

The fact that the law provides this penalty is conclusive of the statement that the sale in such case would be good. This provision of the law would not be needed if the chattel mortgage followed the property without recordation.

If fraud had been alleged and proved in this case it might be good, for it has been said that fraud "cuts down everything." If the seizing creditor had fraudulently and illegally taken this car across the line in order to seize it the seizure would be illegal. But in this case no fraud is alleged, though the expression "bad faith" is used. The seizure is considered valid and legal. No effort is made to set it aside. The only object of this suit is to rank plaintiff's lien ahead of defendant's, and in this action she recognizes defendant's seizure as legal and valid and free from fraud.

For the reasons assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is affirmed. It is further ordered that the plaintiff pay all costs of both courts.