Plaintiff is a foreign corporation doing a loan and financing business in this State, and, as alleged in its petition, it is the holder of a promissory note in the sum of $1,350, executed and signed by Frank Nastasi and secured by a chattel mortgage on a Dodge automobile. At the time the act of mortgage was executed and the note signed on July 26, 1945, the mortgagor, Nastasi, resided in the City of New Orleans and the automobile was located at his residence in that city, recited in the act as being at municipal No. 240 Galvez Street. The act of mortgage was accordingly recorded in the mortgage records of the Parish of Orleans.
On November 17, 1945, Nastasi, without the knowledge or consent of the mortgagor, sold the automobile to William A. Richardson, Jr., a resident of Jefferson Parish who shortly afterwards sold it to Ben Snell of West Bank Motors also in Jefferson Parish. On or about December 15, 1945, Snell sold the car to Peter Naquin of Terrebonne Parish who took it and kept it at his residence at 307 Palm Ave., in the City of Houma. The act of mortgage was never recorded in any other Parish than as originally in the Parish of Orleans.
Before selling the automobile to Richardson, Nastasi, according to further allegations made by plaintiff, paid three installments totalling $337.50 on the note, reducing the same to the sum of $1,012.50. No further payments having been made, the present proceeding was instituted against Peter Naquin in the Parish of Terrebonne on May 8, 1946, in which plaintiff seeks to have enforced the privilege it claims on the automobile arising under the chattel mortgage. Having made the necessary allegations it secured a writ of sequestration under which the car was seized. The action is purely in rem as all that plaintiff prays for is a judgment ordering the automobile to be sold in satisfaction of its hypothecary debt in the sum of $1,012.50 with eight per cent interest from December 1, 1945, together with fifteen per cent attorney's fees, as stipulated in the act of mortgage.
Naquin appeared in answer to the suit and after averring that he owns the car by virtue of his purchase as alleged in plaintiff's petition, put all other allegations at issue by denying the same. He avers that at the time he bought the car he had no knowledge of any outstanding mortgage bearing on it and, on information, alleges that none existed. He then assumes the position of a plaintiff in reconvention, setting out his purchase of the car from West Bank Motors, that being the trade name of C. Ben Snell, in the Parish of Jefferson, in good faith, on December 15, 1945, for the price of $1,530.40 including insurance and finance charges, and with warranty of title from his vendor. He next sets out the damage he claims to have suffered by reason of the unlawful seizure of the automobile including loss of its use and other inconveniences he has been put to as well as the attorney's fees he has incurred in having to defend the suit. He accordingly prays for judgment in reconvention against plaintiff for the amount of damages he claims to have sustained. He next asks that C. Ben Snell be called in warranty to defend title to the car which had been warranted by him and that in the event *Page 768 
judgment be rendered against him that he also recover judgment against Snell, as warrantor, for the amount of the purchase price paid by him together with all damages claimed by him as having arisen out of the seizure of the car.
Snell appeared in answer to the call in warranty made on him. He denied practically all the allegations of the plaintiff's petition and charged that the rate of interest on the note sued on is usurious and therefore voided the entire indebtedness. As to the demands of Naquin he admits having sold him the car for the price alleged but denied the allegations relating to warranty of title as being merely conclusions of law. He joined him however in the allegation that no mortgage or other claim existed against the automobile when he bought it. He then sets out his purchase of the car from Richardson for the sum of $1,100 on November 19, 1945, with warranty of title and he calls Richardson in warranty as a necessary party to the suit to defend Naquin's title.
Richardson, in turn, answered the call in warranty made upon him admitting the sale of the car by him to Snell and making practically the same defenses. He then sets out his purchase of the car from Nastasi who warranted title to him and calls him in warranty to defend the same.
Nastasi made no appearance whatever and no further action seems to have been taken against him.
After trial and submission in the court below the district judge rendered judgment in favor of the defendant, Naquin, and against the plaintiff dismissing its suit at its costs and dissolving the writ of sequestration which had been issued. He rendered judgment further in favor of the defendant on his claim in reconvention against the plaintiff in the sum of $760. All calls in warranty were dismissed. Plaintiff has taken this appeal and defendant has answered praying for an increase in the amount of the award on his demand in reconvention. Richardson also answered the appeal, praying that in the event the judgment be reversed and that there be judgment in favor of the plaintiff against the defendant and in favor of the defendant against the various warrantors that the defendant Naguin is not entitled to recover from any of the said warrantors the damages claimed by him.
There are two principal defenses urged to the plaintiff's demand, the first being that the mortgage which it seeks to enforce is inoperative because although the automobile was removed from one parish to another the act of mortgage was never recorded in any of the parishes to which it was removed so as to remain effective, and second, that the obligation sued on is void as the rate of interest and other charges made are usurious. It is also now contended that the loans included in the note sued on are governed by the Small Loan Act, Act No. 94 of 1942, and that the provisions of that act have been violated.
In Louisiana the question of the recordation of an act of chattel mortgage in relation to the property that is mortgaged and then removed from the parish of the original transaction and recordation to another, has been a rather vexing one. In American Jurisprudence which treats this subject in Vol. 10, page 77, we find the following statement at Sec. 95: "In the absence of any specific statutory provisions regarding the removal of mortgaged property, the record of a chattel mortgage in the town or county where it is required to be originally filed for record, constitutes constructive notice to all the world, and the mortgage is valid even though not refiled in the town or county to which the property is subsequently removed." To the same effect is the statement in Vol. 14 C.J.S., Chattel Mortgages, § 155, page 758.
[1] In Louisiana the Legislature, in 1918, passed a comprehensive act governing the subject of chattel mortgages, being Act No. 198 of that year. With regard to recordation, the act provided that in order to affect third persons without notice, the act of mortgage had to be recorded in the parish where the property was situated at the time it was executed and also in the parish in which the mortgagor resided. Sec. 5 of the act then provided that the mortgagor was not to remove the property mortgaged from the parish where the mortgage was given without the written consent of the mortgagee designating the parish or parishes to which the same was to be *Page 769 
taken; and "to preserve such mortgage against third persons in such cases it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted." Wilson v. Lowrie, 156 La. 1062, 101 So. 549, 550. It is seen from this provision therefore that in this State there was a statutory enactment and that in order to preserve the mortgagee's rights in case of removal of the property from the original parish where the act was recorded, to another, without his written consent, it became his duty to see that the act of mortgage was recorded in the parish to which the removal was made. Those provisions of the statute were construed in the case of Wilson v. Lowrie (Oil City Iron Works, Intervener), supra, and they were held applicable. The phrase "without the written consent of the mortgagee" appears to have been given no effect and this gave rise to a dissenting opinion by one of the members of the court.
Not long thereafter the same question was presented to the court in the case of Gulf Finance Securities Co. v. Taylor, Levy Intervener, 160 La. 945, 107 So. 705, 706 and the ruling in the Wilson case was approved. The court stated: "It is true that, by having the mortgage evidenced by a notarial act, and by having the act recorded in the parish where the mortgagor resided and where the mortgaged property was, the mortgagee did all that the statute required for the mortgage 'to affect third persons without notice'; but the subsequent provisions of the statute, which we have quoted, indicated to us, when we were considering the case of Wilson v. Lowrie [supra], that, when the mortgagor had moved the property into another parish without the consent of the mortgagee, the mortgage did not there 'affect third persons without notice'." Later on it was stated: "The mortgagee's consent has nothing to do with the matter of giving notice to third persons. It seems to us that the reason why the Legislature has required the mortgagee to have his mortgage recorded in the parish into which the mortgaged property is removed with his consent, but does not require him to have his mortgage recorded in the parish into which the property is removed without his consent, is that, in the one case it is possible and in the other it is impossible for the mortgagee to protect his mortgage in that way." That decision also lacked unanimous approval. The majority opinion seems to have recognized the fact, as referred to in the dissenting opinion in the Wilson case, that the chattel mortgage law had its origin in the common law red that it was an innovation in this state, and that the decision in that case may not have been in line with decisions of other states on the same question. The court held however that those decisions were not controlling and in adhering to its ruling in the Wilson case it stated that if it was "not in accord with the intention of the Legislature, it is better that that body should make the change."
The Legislature, evidently considered that a change was necessary for at a subsequent session, in the year 1936 it amended the act of 1918 by adopting Act No. 178 of 1936 which provided that "in order to affect third persons without notice, both within the Parish where recorded and outside of the Parish where recorded," but within this state, instruments evidencing chattel mortgages need only be recorded in the place where the mortgage is executed and at the domicile of the mortgagor. That provision left no doubt therefore that mortgaged property under a chattel mortgage which was removed from one parish to another, within the state, remained affected by the mortgage under the original recordation as provided therein, without necessity of refiling or re-recording the act in the parish to which it was removed. The elimination of this duty on the part of the mortgagee had the effect of placing our law within the general statement quoted from American jurisprudence, supra, which is to the effect that in the absence of a statute containing such provisions, the recording of a chattel mortgage in the parish where it is required to be originally filed for record constitutes constructive notice to all the world.
It is apparent that the Supreme Court so regarded the Louisiana law after its amendment by the Act of 1936 for in the case of General Motors Acceptance Corp. *Page 770 
v. Nuss, 195 La. 209, 196 So. 323, 324, it was held that since the enactment of the statute of 1936 a chattel mortgagee need not record his mortgage in every parish of the State to obtain full protection, but a mortgage recorded where it is executed and where the mortgagor is domiciled, remains effective against third persons throughout the entire State. It so happened that the author of the opinion in that case was the same justice who had dissented in the Wilson and the Gulf Finance cases and apparently he considered that the amending Act of 1936 had brought our chattel mortgage law in harmony with that of the other States for he said: "Thus it will appear that for more than twenty-five years, as the result of legislative sanction, the practice of giving and accepting chattel mortgages has been an integral part of the general property law of this State. This being so, it would seem to be clear that in the interest of uniformity in the interpretation and the application of the law, the decisions of our courts should be brought into harmony with the decisions of the courts of our sister states where the legal concepts and principles of chattel mortgages have been well understood and settled for many years." In that case the direct question involved went beyond the effect that recordation in the original parish had on the property after it had been removed to another parish because the mortgage in that case had been executed in the State of Missouri and the decision called for the effect which should be given to the mortgage in Louisiana. Notwithstanding the fact that the act of 1936 made no definite provisions to give effect to such mortgages, the court nevertheless gave the Missouri mortgage protection in Louisiana on the ground of comity between both States.
[2] In 1944 the subject of chattel mortgages again received the attention of the Legislature and by Act No. 172 of that year a new statute was passed in which all prior acts on the subject were specifically repealed. In a digest of Louisiana legislation of 1944 by Mrs. Harriet S. Daggett, Professor of Civil Law, Louisiana State University, Louisiana Law Review, Vol. 6, page 7, she states, with reference to this particular act, that it "compiles, unifies and extends the previous groups of statutes dealing with chattel mortgage, brings the device more closely in line with the law of mortgage and makes several other minor changes." After quoting the following provision in the act: "In order to effect third persons, every chattel mortgage must be by authentic act, or by private act, duly authenticated in any manner provided by law," Mrs. Daggett states: "It will be observed that the words, 'without notice' have been deleted so that the act now conforms with the law of mortgage and that authentication is provided for by general terms." With regard to the provisions governing recordation she has this to say: "The recordation rule has been changed in several ways that appear distinctly advantageous. One, a multiple original is designated for filing. Second, the instrument must be filed in the parish of the location of the chattel as stated in the instrument as well as in the parish of the mortgagor if he is domiciled in the state. Third, if the mortgagor is not domiciled in the state recordation in the parish where the chattel is to be located according to the terms of the mortgage instrument is sufficient. The third change enables a nonresident to comply with the law which was not possible before." Mrs. Daggett concludes her comment as follows: "Thus while not many actual changes have been made those appearing seem to have been purposeful and the unity, clarity and convenience resulting from the compilation and the re-write in themselves alone, make the new act worthwhile."
We believe that the third point enumerated with regard to changes in the rule of recordation may have grown out of the doubt that may have been left on the question of a mortgage executed by a party not domiciled in this State, and arising from the decision in General Motors Acceptance Corp. v. Nuss, supra, which was based on comity between the two states, and, according to the statement made, it would seem that that provision was inserted in order to give definite legal sanction to the effectiveness of such mortgages by virtue of their recordation in the parish where the chattel *Page 771 
is to be located according to the terms of the mortgage instrument and which of itself shall be sufficient.
The act of mortgage with which we are concerned in this case was executed in July, 1945 and necessarily it is governed by the provisions of the act of 1944. In that act, Sec. 3 provides that "in order to affect third persons, every chattel mortgage must be by authentic act, or by private act, duly authenticated in any manner provided by law." The section then goes on to provide the method of recordation of the act as outlined in the comments made by Mrs. Daggett from which we have just quoted.
The Act of 1936, in providing for the effect which recordation shall have as notice to third persons, sets forth under Sec. 2 that "in order to affect third persons without notice, both within the Parish where recorded and outside of the Parish where recorded, but within the State of Louisiana, said instrument must be passed by notarial act, * * * and the original or a certified copy thereof shall be recorded in the office of the Recorder of Mortgages in the Parish where the Act of mortgage is executed, and also at the domicile of the mortgagor; * * *." The contention is now made on behalf of the defendant and the warrantors that because the act of 1944 did not contain that exact language in its provisions with regard to notice and how third persons were to be affected, the Legislature intended to revert to the former law of 1918 as the same had been interpreted with regard to these matters by the Supreme Court in the Wilson and Gulf Finance cases, supra.
Reference is also made to the other provisions in this statute requiring an affidavit by a resident of one parish from a nonresident, with regard to movable property with which they are dealing and making the purchaser who does not require such affidavit personally liable to the creditor for the debts secured by the property. Under circumstances of fraud a criminal penalty also could be enforced.
We cannot agree with counsel for the defendant and the warrantors in the contentions which they make. We believe that the controlling provision in the act of 1918 which had the effect, more than any other, of preserving the mortgage upon removal of the property from one parish to another, was that one which imposed the duty upon the mortgagee to reinscribe his mortgage in every parish to which the property was removed and the elimination of that provision in the Act of 1944, as it had also been eliminated in the Act of 1936, appears to us to be far more significant than the different wording of the two acts with regard to how notice to third parties is effected. What difference there is does not, in our opinion, justify the conclusion that the Legislature, after having amended the law in 1936 so as to make it conform with that of other jurisdictions, as was pointed out in the case of General Motors Acceptance Corp. v. Nuss, supra, intended to change it again in 1944 and revert to the former status which was out of harmony with the law of other States on the subject of chattel mortgages.
With regard to the other provisions referred to, the only difference we can make out of them as they are found in the several acts is that under the statute of 1918, the creditor had only a personal action against the purchaser and an action in rem as well. The corresponding provisions of the Act of 1944 seem to emphasize the criminal aspect in case of fraudulent intent to defeat the mortgage but that act also makes the purchaser personally liable to the creditor whose debt is secured when he buys the mortgaged property without obtaining the required affidavit. The provisions therefore have the same effect as those contained in the Act of 1936, giving the creditor both a personal action against the purchaser and an action in rem against the property.
[3] The same contention that is here made with regard to notice that is given to third persons by the recordation of the act under the provisions of the act of 1944 seems to have been made before the Court of Appeal for the Second Circuit in the case of Sinclair v. Crew, Nelms, Intervener, La. App.,26 So.2d 331, 334, and in disposing of the issue that court stated: "We do not agree with this construction of the Act. It is our opinion that the provisions of Section 4, in which it is said, 'and the filing shall be notice to all parties of the *Page 772 
existence of the mortgage,' is all inclusive, and that filing and recordation as provided in Section 3 of the Act gives the chattel mortgage effect in all the other parishes in the state. We are fortified further in reaching this conclusion by the fact that there is no requirement for recordation of a copy of the mortgage in any other parish in case of removal, though a penalty is provided for removal without the consent of the mortgagee, provided the removal is with fraudulent intent to defeat the mortgage. Thus it is seen that the 1944 Act is different from Act No. 198 of 1918, in which requirement was made that the mortgage be recorded in any parish to which the property might be removed." This decision was commented on favorably in notes in both the Louisiana Law Review, Vol. 7, page 150 and the Tulane Law Review, Vol. 21, page 112. It was by a unanimous court and is not to be lightly disregarded. We find ourselves in accord with it and if the decision in the present case was based on the ground that the mortgage which plaintiff seeks to have enforced was not effective in the Parish of Terrebonne because it had not been recorded in that parish, we are constrained to disagree and hold otherwise.
[4] With regard to the other defenses made, that is that the obligation sued on is usurious and is in violation of the Small Loan Act of Louisiana, we hold that they are matters of defense which are personal to the defendant Nastasi, maker of the note, who did not chose to appear and answer the suit. The action presently before the court is one which is purely in rem and as far as the other defendants are concerned they have no interest in raising such contentions. Plaintiff is not seeking to secure a personal judgment against any of them.
[5] The judgment appealed from will have to be reversed in so far as it dismissed the plaintiff's demand and dissolved the writ of sequestration under which the automobile had been seized. We note that none of the defendants or warrantors have answered the appeal praying that in the event of a reversal of the judgment appealed from they be given judgment on their respective calls in warranty. To the extent that the judgment dismissed all calls in warranty therefore, it will have to be affirmed as it cannot be amended in so far as coappellees are concerned.
For the reason stated it is now ordered, adjudged and decreed that the judgment appealed from, in so far as it rejected the plaintiff's demand and dissolved the writ of sequestration which had issued herein, and also awarded the defendant damages in the sum of $760 against the plaintiff on his reconventional demand, be and the same is hereby set aside, annulled and reversed and it is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff Mossler Acceptance Corporation and against the defendant, Peter J. Naquin, maintaining the writ of sequestration herein issued under which that certain Dodge automobile, Model 1941, bearing Motor Number D 19-160387 had been seized by the Sheriff of Terrebonne Parish and that, acting under said writ, the said Sheriff proceed at once to advertise and sell the said automobile at public sale and that from the proceeds thereof the plaintiff be paid, by preference and priority, the sum of $1,012.50 with eight per cent per annum interest from December 1, 1945, and fifteen per cent of the aggregate amount of said principal and interest, as attorneys fees, together with all costs, in full and complete satisfaction of its hypothecary debt arising under the chattel mortgage which it holds.
It is further ordered that in so far as the said judgment dismissed all calls in warranty herein the same is affirmed.