ROGERS, Justice.
 

 This case presents a contest between a Missouri mortgagee, on the one hand, and a' Louisiana purchaser and a Louisiana mortgagee, on the other hand, with respect to a certain Chevrolet automobile. The district court maintained the right of priority claimed by the Missouri mortgagee, but this judgment was reversed by the Court of Appeal, one of its three' judges dissenting. Certiorari has brought the case here.
 

 The facts are not disputed. So far as is necessary to be stated;, they are that the Buford Chevrolet Company, of Frederick-town, Missouri, sold the automobile in question to Charles R. Caldwell, a resident of Fredericktown, who gave a mortgage on the automobile to his vendor to secure the credit portion of the purchase price. This mortgage, which was regularly executed and recorded according to the laws of Missouri, was subsequently acquired by the General Motors Acceptance Corporation of the State of New York. Without the knowledge or consent of the General Motors Acceptance Corporation, the automobile was removed from the State of Missouri to the City of New- Orleans, where it came into the possession of the Globe Used Car Lot, and was purchased from that concern by George L. Nuss. The note of Nuss, given in part payment of the purchase price, was acquired by the General Finance Company of Louisiana, Inc. The automobile was sequestered at the instance of the General Motors Acceptance Corporation, Inc., seeking to enforce its rights under the Missouri mortgage. The sequestration was bonded by the defendant Nuss. The General Finance Company intervened and joined Nuss in resisting plaintiff’s suit, both alleging that inasmuch as the Missouri mortgage was not recorded in Louisiana, it was ineffective as against their rights with respect to the automobile, which rights were acquired in good faith and without knowledge of the existence of the Missouri mortgage.
 

 The question here is not one involving the consent of the holder of the Missouri mortgage to the removal of the mortgaged property from Missouri to Louisiana, or of its knowledge of such removal and failure to assert its rights within a reasonable time.
 
 *214
 
 The sole question presented here is whether the lien of the Missouri mortgagee is superior to the title of the innocent Louisiana purchaser and of the lien of the innocent Louisiana mortgagee, the automobile encumbered by mortgage having been removed from Missouri and brought to Louisiana without the knowledge or consent of the Missouri mortgagee, which asserted its right of priority within a reasonable time after it had knowledge of the removal.
 

 Prior to the year 1912, a chattel mortgage was unknown to the laws of Louisiana and such a mortgage executed in another state was not enforcible in this State after, the mortgaged chattel had been brought here. Delop v. Winsor, 26 La. Ann. 185. In 1912, the policy of this State with respect to chattel mortgages was changed when, at the session of the Legislature held that year, an act was passed providing for the granting of mortgages on lumber, logs and livestock. Act 65 of 1912.
 

 Section 1 of Act 65 of 1912 was amended and reenacted by Act 155 of 1914. Both acts were amended and reenacted by Act 18 of 1915, Ex.Sess. These three acts, however, were expressly repealed by Act 151 of 1916, which provided for the granting of mortgages not only upon lumber, logs, and livestock, but also on numerous other kinds of personal property. Act 151 of 1916, in turn, was repealed by Act 198 of 1918, which, with its amendments, is the present chattel mortgage law of this State. Under that law, as-it now exists and operates, every kind of chattel may be mortgaged under the rules prescribed by the statutes constituting the law. One of the amendments to Act 198 of 1918 is Act 178 of 1936, which provides, among other things, that, in order to affect third persons without notice, both within the parish where recorded and outside the parish where recorded but within this State, instruments evidencing the chattel mortgage need only be recorded in the place where the mortgage is executed and at the domicile of the'mortgagor.
 

 Thus it will appear that for more than twenty-five years, as the result of legislative sanction, the practice of giving and accepting chattel mortgages has been an integral part of the general property law of this,State. This being so, it would seem to be clear that in the interest of uniformity in the interpretation and the application of the law, the decisions of our courts should be brought into harmony with the decisions of the courts of our sister states where the legal concepts and principles of chattel mortgages have been well understood and settled for many years.
 

 The highest courts of many of the states have spoken upon the subject, and, as reflected in their decisions, the weight of authority undoubtedly is that a valid chattel mortgage, recorded in the State where executed, and there conveying constructive notice, continues to have the same effect when the mortgaged property is removed to another state. See text of the following cases: Davis v. Standard Accident Ins. Co., 35 Ariz. 392, 278 P. 384; Creelman Lumber Co. v. Lesh & Co., 73 Ark. 16, 83 S.W. 320, 3 Ann.Cas. 108; Mercantile Accept. Co. v. Frank, 203 Cal. 483, 265 P.
 
 *216
 
 190, 57 A.L.R. 696; Mosko v. Matthews, 87 Colo. 55, 284 P. 1021; General Credit Corp. v. Rohde, 122 Conn. 100, 187 A. 676; In re Shannahan Hardware Co., 2 W.W.Harr., Del., 37, 118 A. 599; Smith’s Transfer & Storage Co. v. Reliable Stores Corp., 61 App.D.C. 106, 58 F.2d 511; Hopkins v. Hemsley, 53 Idaho 120, 22 P.2d 138; National Bond & Investment Co. v. Larsh, 262 Ill.App. 363; First National Bank v. Ripley, 204 Iowa 590, 215 N.W. 647; Perkins v. National Bond & Inv. Co., 224 Ky. 65, 5 S.W.2d 475; Silver v. McDonald, 172 Minn. 458, 215 N.W. 844; Finance Service Corp. v. Kelly, Mo.App., 235 S.W. 146; National Bank of Commerce v. Morris, 114 Mo. 255, 21 S.W. 511, 19 L.R.A. 463, 35 Am.St.Rep. 754; Farmers’ & Merchants’ Bank v. Sutherlin, 93 Neb. 707, 141 N.W. 827, 46 L.R.A.,N.S., 95, Ann.Cas.1914B, 1250; Hart v. Oliver Farm Equipment Sales Co., 37 N.M. 267, 21 P.2d 96, 87 A.L.R. 962; Farmham v. Eichin, 230 App.Div. 639, 246 N.Y.S. 133; Wilson v. Rustad, 7 N.D. 330, 75 N.W. 260, 66 Am.St.Rep. 649; Kerfoot v. State Bank, 14 Okl. 104, 77 P. 46; Bankers’ Finance Corporation v. Locke & Massey Motor Co., 170 Tenn. 28, 91 S.W. 2d 297; Cunningham v. Donelson, 110 W. Va. 331, 158 S.E. 705; and Yund v. First National Bank, 14 Wyo. 81, 82 P. 6. The ■general rule is stated in Corpus Juris, Volume 11, Page 424, as follows: “The great weight of authority is to the effect that a chattel mortgage, properly executed and recorded according to the law of the place where the mortgage is executed and the property is located, will, if valid there, be held valid even as against creditors and purchasers in good faith in another state to which the property is removed by the mortgagor, unless there is some statute in that state to the contrary, or unless the transaction contravenes the settled law or policy of the forum.”
 

 For other statements of the general rule, see Restatement of The Law — Conflict of Laws, sec. 268, page 354; Jones on Chattel Mortgages and Conditional Sales, Bowers Edition, Vol. 1, sec. 299; page 479, Huddy Encyclopedia of Automobile Law, Ninth Edition, Vol. 11, page 32; and Blashfield’s Cyclopedia of Automobile Law and Practice, Permanent Edition, § 4710, Vol. 7, page 327.
 

 The Courts of only three states have refused to follow the prevailing rule, grounding their refusal upon the proposition that it would be unreasonable to require citizens of their respective states to take notice of the records of another state. The states in which the adverse decisions have been rendered are Pennsylvania, Michigan and T exas.
 

 The opinion of the Court of Appeal in this case is apparently founded on the theory that the jurisprudence of this State is in line with the decisions of the states representing the opinion of a small minority. The cases involving slaves and the other early decisions of our Supreme Court referred to in the opinion of the Court of Appeal, beginning with Miles v. Oden, 8 Mart, N.S., 214, 19 Am.Dec. 177, decided in 1829, and ending with Delop v. Windsor, 26 La.Ann. 185, decided in 1874, are not controlling of the issues presented in this case. The decisions affecting the status of slaves are not appropriate for the obvious
 
 *218
 
 reason that slaves were classed as immovables by operation of law. Civil Code of 1825, Article 461. As such, they were subject to the same rules as mortgages on real estate. The mere reading of the decisions discloses they rest upon the proposition that when a slave was brought into this State he became an immovable and was thereafter subject to the laws of the State concerning immovables. It is elementary that a mortgage on an immovable is ineffective against third persons unless it is recorded where the immovable is situated.
 

 The case of Ohio Insurance Company v. Edmondson, 5 La. 295, decided in 1833, is referred to by the Court of Appeal and is strongly relied on by the defendant and the intervener. It is said in the brief filed on behalf of the intervener that in that case the courts of Louisiana refused to give effect, against an innocent person in Louisiana, to a lien placed on a steamboat in Ohio but not recorded in Louisiana. The only question of Louisiana law involved in the decision, as we understand it, was whether a foreign creditor, having a foreign lien on a steamboat, could avail himself of the remedies provided by the laws of Louisiana to enforce his lien as against the holder of a foreign title to the steamboat. The Supreme Court of this State held that the remedies provided by our laws were available to the foreign lienholder for the enforcement of his lien. On the merits, the controversy was between the holder of an Ohio lien, bearing on the steamboat, and the holder of a title to the steamboat resulting from a judicial sale made in the State of Kentucky. On rehearing, 5 La. 306, the Court construing the applicable laws of Ohio and Kentucky, recognized the superior right of the Kentucky purchaser and rendered judgment in his favor maintaining his title. In so deciding, it does not appear that the Court considered the doctrine of comity as construed and applied by the courts of Kentucky or any other state.
 

 The Court of Appeal, in its opinion, refers to four cases that were decided after the admission of chattel mortgages into the legal system of this State. Those cases are Wilson v. Lowrie, 156 La. 1062, 101 So. 549; Gulf Finance & Securities Company v. Taylor, 160 La. 945, 107 So. 705; Brock v. Cupples, decided by the Court of Appeal, Second Circuit, unreportqd, and Devant v. Pecou, 13 La.App. 594, 128 So. 700. The cases of Wilson v. Lowrie and Gulf Finance & Securities Company v. Taylor are not applicable to this case, because they involved chattel mortgages granted and recorded in this State. In those cases, which were decided prior to the adoption of the amending act, 178 of 1936, the Court merely enforced the requirement of section 5 of Act 198 of 1918 that, in case of the removal of the chattel from one parish to another, it was incumbent upon the mortgagee to record the mortgage in the parish to which the chattel was removed. The unreported decision of the Court of Appeal for the Second Circuit in Brock v. Cupples was also decided before the adoption of Act 178 of 1936. In that case the Court of Appeal, by a divided court, on rehearing held that when an automobile mortgaged in Texas was brought into Louisiana, it became subject to the provisions of Act 18 of 1915, the existing chattel mortgage law, which, like
 
 *220
 
 Act 198 of 1918, required the mortgagee, in order to preserve his rights, to record the mortgage in any parish to which the chattel was removed. It is true, as is said in the opinion of the Court of Appeal that, in the Brock case, “a writ of review was applied for to the Supreme Court and refused,” but it by no means follows from the refusal that the Supreme Court approved of the decision of the Court of Appeal. On the contrary, the writ was apparently refused on the defendant’s motion showing that the plaintiff, in applying for the writ, had not complied with the rules of the Supreme Court regulating such applications. Be that as it may, we do not think the Brock case supports the contention of the defendant and the intervener in this case, because it is based entirely upon a provision of the old chattel mortgage law which has been not only omitted from the new law, but is also superseded by a contrary provision. Since the enactment of Act 178 of 1936, it is not necessary for a mortgagee to record his mortgage in every parish of the State to obtain full protection. A mortgage recorded where it is executed and where the mortgagor is domiciled is now effective against third parties throughout the entire State.
 

 The case of Devant v. Pecou was decided by the Court of Appeal for the First Circuit in 1930, 13 La.App. 594, 128 So. 700, which was long prior to the adoption of Act 178 of 1936. In that case the Court refused to recognize a Texas chattel mortgage, unrecorded in this State, to the prejudice of a seizing creditor in Louisiana. The case was decided under the provisions of Act 198 of 1918 and the cases of Wilson v. Lowrie, and Delop v. Windsor, which we have hereinabove referred to, are cited in support of the decision. The Court apparently refused to follow the rule of comity on the ground that since Texas, where the chattel mortgage was executed, did not recognize a foreign chattel mortgage not recorded in that State, the Louisiana courts should refuse to recognize a Texas chattel mortgage not recorded in this State.
 

 We do not think that the courts of one state should resort to the reciprocity doctrine in order to defeat the rights of a mortgage holder simply because the courts of the state where the mortgage was granted would deny similar relief to one of its citizens holding a mortgage granted in his state. It was so held in Hart v. Thompson, 37 N.M. 267, 21 P.2d 96, 87 A.L.R. 962, decided in 1933.
 

 The rule of retaliation can never be satisfactorily invoked to regulate rights and obligations among citizens of the different states. It costs more to repay a wrong in kind than to overlook it. The surest way to end ill-treatment is to meet it with good treatment. The application of the rule of comity by one state tends to induce reciprocal treatment of the rights and privileges of its citizens in other states.
 

 If the test of reciprocity should be regarded as the sole basis for the recognition of the rule of comity, the courts of this State should certainly recognize and enforce a Missouri chattel mortgage, because the courts of Missouri would certainly recognize and enforce a Louisiana chattel mortgage. This is so, because the courts of Missouri have repeatedly, and without ex
 
 *222
 
 ception, recognized and enforced chattel ■ mortgages of other states not recorded in Missouri. See Finance Service Corporation v. Kelly, Mo.App., 234 S.W. 146; National Bank of Commerce v. Morris, 114 Mo. 255, 21 S.W. 511, 19 L.R.A. 463, 35 Am.St Rep. 754. Both decisions have been offered in evidence in this case.
 

 The case of Hughes, Hyllested & Co. v. Klingender Brothers, 14 La.Ann. 845, decided in 1859, also referred to by the Court of Appeal, is authority merely for the proposition that under the doctrine of comity the courts of this State will not enforce obligations and rights arising under the laws of a foreign country which are not analogous or similar to the laws of this State. Delop v. Windsor, supra, decided in 1874, is authority for the proposition that considerations of comity were not sufficient to justify recognition by courts of this State of a chattel mortgage valid in other states, but unknown to our law. Those two decisions, as well as the other early decisions referred to in the opinion of the Court of Appeal, are not applicable to the changed conditions now prevailing in this State. The value of all those cases as precedents has disappeared as the result of the adoption of our chattel mortgage law.
 

 Although this court has not had occasion to pass upon the question presented in this case, it has had occasion to pass upon the question of giving effect as between the contracting parties to a foreign chattel mortgage. See Harnischfeger Sale Corporation v. Sternberg Company, Inc., 179 La. 317, 154 So. 10, where in a proceeding similar to this the court enforced a Missouri chattel mortgage on a dragline machine subsequently brought into this State by the mortgagor.
 

 Since chattel mortgages, which were formerly unknown, have been made known to our law by legislative action, we see no reason why the courts of this State should not adopt the 'policy established by the courts of many of the states in dealing with chattel mortgages. It would be an ungracious, if not an impolitic act, for the courts of this State to refuse to reciprocate the generous comity of the many states which recognize the obligation of interstate courtesy upon this subject. The assumptions back of the minority rule that, unless the mortgage on property brought into the state is re-recorded there, the mortgage is invalid as against subsequent innocent third persons, seem to be that recordation of a mortgage operates as constructive notice thereof only within the territorial limits of the state of recordation ; that the recording statute of the state to which the mortgaged property is removed declares a policy to protect those innocently dealing with the property against an undisclosed or secret reservation of an incumbrance, whether it was granted within or without the state.
 

 The contrary doctrine, and the one which we believe reflects the sounder view, is that it violates no public policy of the state to enforce, as against' those included within the protection of the local statute, a mortgage executed upon the property in another state prior to its surreptitious re.moval therefrom, even though the mortgage is not recorded in the state to which the property is removed and where the subsequent transactions occur.
 

 
 *224
 
 In Motor Investment Co. v. Breslauer, 64 Cal.App. 230, 221 P. 700, 703, the Court made the following appropriate comment on the rule protecting the lien of foreign mortgages, viz., “The principle underlying it may be analogized to that upon which the owner of property stolen from him and taken * * * to another state may follow the thief into the latter state and reclaim or take possession of the pilfered goods or chattels wherever found. A state may, it is true, refuse to recognize the rule of comity in such cases; but, should it do so, it would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable and more desirable that an innocent purchaser or incumbrancer of personal property brought into a state under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the state should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein.”
 

 It is to be observed that it is a matter entirely within the power of the Legislature of this State, and neither Act 178 of 1936, nor any other legislative act covering the subject, so far as we have been able to ascertain, requires a re-recording of a chattel mortgage, executed and recorded in the manner required by the law of the mortgagee’s domicile outside this State, where the chattel was then situated. In other words, while our present chattel mortgage law provides generally for the recording of chattel mortgages in this State in order to affect the rights of third persons without notice, it does not specifically, or in terms, cover chattel mortgages executed by nonresidents out of the State upon property subsequently brought into the State.
 

 Our conclusion, in line with the great weight of authority on the subject, is that the re-recording in this State of a foreign chattel mortgage is not necessary, in order to protect the mortgagee against innocent purchasers or incumbrancers of property after its removal to this State provided, as held in many of the cases, that the foreign mortgagee did not know of or consent to the removal of the property.
 

 For the reasons assigned, the judgment of the Court of Appeal is annulled, and the judgment of the Civil District Court, recognizing and enforcing the plaintiff’s chattel mortgage herein above the claim of the intervener and all claimants whatever, is reinstated and affirmed.
 

 O’NIELL, C. J., recused. '