AYRES, Judge.
This is an action on a chattel mortgage note on which plaintiff sought judgment for the balance allegedly due thereon with recognition of its chattel mortgage and the lien and privilege on the mortgaged property resulting from its recordation. We are only concerned on the appeal with the question of the defendant’s personal liability for the purchase price of one of three loggers, or tractors, which were mortgaged to the plaintiff. Plaintiff alleges that the defendant has incurred personal liability under LSA-R.S. 9:5362 for his failure to procure an affidavit as to the nonexistence of a mortgage on the property or of a balance due on the purchase price thereof.
The record establishes that J. B. Lee Tractor & Implement Company, Inc., hereinafter referred to as “Lee,” purchased three mountain loggers, or tractors; that, for the payment of their purchase price, a loan was obtained from plaintiff for which Lee executed a promissory note dated January 17, 1966, in the sum of $30,687.60, secured by a chattel mortgage on the three tractors; and that thereafter, on January 31, 1966, Lee sold one of these machines to Aaron Ford Tractor Company, Inc., hereinafter referred to as “Aaron,” domiciled in Natchitoches, Natchitoches Parish, Louisiana, which, in turn, sold the tractor to J. S. Brewton, Jr., a resident of Winn Parish, Louisiana. For the reason that neither of these parties took the precaution to comply with the provisions of LSA-R.S. 9:5362 by obtaining an affidavit that there were no mortgages against the property, nor was there any balance due on its purchase price, both purchasers were held personally liable for the balance of the principal indebtedness, $8,687.60.
From this judgment both Aaron and Brewton moved for and were granted orders of appeal. Brewton did not perfect his appeal by the timely filing of an appropriate bond. The judgment against him is .therefore final.
The statute, noted above, upon which plaintiff relies to recover against Aaron provides:
“It shall be unlawful for a resident of any parish to purchase the movable property described in R.S. 9:5351 from any nonresident of such parish, without first obtaining an affidavit from the nonresident that there is no mortgage on the property, nor any money due for the purchase price thereof, and the purchaser who shall buy the movable property without having obtained the affidavit, shall be personally liable to the creditor for the debt secured by the property.”
During the course of the trial it was established that plaintiff, C. I. T. Corporation, was aware of the following facts: Lee was engaged as a dealer in buying and selling the type of machinery and equipment financed by plaintiff. Because of the nature of the business, Lee would regularly sell property on which plaintiff held a mortgage. The funds received from such sales were delivered to plaintiff; whereupon, the property sold would be released from the mortgage. This procedure was necessary in the operation of the business. Moreover, it was shown that plaintiff was obligated to release the property from the mortgage when the proceeds from the sale of a mortgaged logger were paid to the plaintiff. (Plaintiff admitted receiving a payment of $10,000 on January 31, 1966.)
In connection with this phase of the matter, plaintiff’s witness, Kenneth Hagen-back, its assistant secretary and division operations manager of its New Orleans office, assigned to clear up outstanding debts in that office, testified as follows:
“Q. You do know, though, do you not, that C. I. T. was certainly fully aware that J. B. Lee Tractor & Implement Company was a dealer in the business of selling the type of equipment that you financed?
A. That is correct.
*749 Q. And it was, of course, understood, because of the nature of his business that he would from time to time sell property on which C. I. T. had mortgages, or a mortgage?
A. Yes, sir.
Q. Was it not customary that while a mortgage of C. I. T. was still on a piece of property that Mr. Lee of necessity would sell it to a purchaser, obtain the money, deliver the money to C. I. T. and then the mortgage would be released ?
A. Would you go through that once more now?
Q. It was necessary, was it not, that from time to time, because Mr. Lee was in the business of selling these items of equipment, that he would close a sale with a purchaser, receive the money, transmit it to C. I. T. and your company would then release its mortgage?
A. That is correct.
Q. And it was understood that you were obligated to do that when you received the money?
A. That is correct.
Q. Now, in connection with the account which you have identified as No. 39363, which involves the mortgage on the three mountain loggers, 803, 827 and 829, the records of your company reflect that you received a payment of $10,000 on January 31, 1966, do they not?
A. That is correct.”
After Lee sold the logger, or tractor, to Aaron, the latter executed its note dated January 31, 1966, for $10,150, payable to bearer one month after date. This note was secured by a chattel mortgage on the tractor purchased by Aaron. Thereafter, but on the same date, Lee endorsed and negotiated the note to the Commercial National Bank in Shreveport, whereupon $10,000 was deposited in the bank to Lee’s account. Prior thereto, on January 27, 1966, Lee had issued and mailed to plaintiff at its New Orleans office, a check in the sum of $10,000. This check was paid by the bank and charged to Lee’s account on February 2, 1966.
One of the contentions of the defendant is that plaintiff received the $10,000 payment made to Lee by Aaron and should have, as it was bound and obligated to do, released the property from the mortgage. However, plaintiff contends that at the time payment was made it did not know the source of the funds. Plaintiff claims all it knew was that it received such a payment on Lee’s indebtedness, and contends, moreover, it was not established that this payment was from funds made available by Aaron.
The evidence, in our opinion, amply, and by a preponderance, establishes that the funds made available through Aaron’s purchase and mortgage of the equipment was the source of the funds constituting the payment made by Lee to plaintiff. At the close of business on Thursday, January 27, 1966, Lee’s bank account showed a balance of $5,905.52. At no time during that day did Lee’s account show a balance of more than $8,493.22. On the following day, Friday, January 28, 1966, Lee’s balance was reduced to a mere $134.58. However, by Monday, January 31, 1966, deposits made by Lee, including the $10,000 received from Aaron, swelled Lee’s account to a total of $61,690.82, which account, however, by the close of the day, was reduced to $24,289.30. Upon the payment, on February 2, 1966, of Lee’s $10,000 check to plaintiff, C. I. T. Corporation, Lee’s account was reduced to only $1,551.28. Thus, with the payment of other items charged to Lee’s account, without the $10,000 deposit made from the funds received from Aaron, there would not have been sufficient funds to pay the check forwarded, as aforesaid, by Lee to plaintiff on January 27, 1966.
Lee appeared to be desperately in need of funds to cover the check forwarded to *750 plaintiff over the weekend. He met Marvin L. Aaron, Aaron’s president, at Armi-stead where Aaron executed the chattel mortgage and note. Later, during the day, the note was negotiated to the bank.
While it may be that plaintiff did not at the time payment was received know the source of the funds from which it was made, there is, nevertheless, no question but that plaintiff subsequently learned the funds were derived from the sale of the tractor, or logger, by Lee to Aaron. Proper credit should have then been entered.
The statute under which plaintiff seeks to hold Aaron personally liable for Lee’s debt is highly technical and must be strictly construed under the facts of this case. To give it literal effect would be most inequitable and would work an undue hardship on an innocent purchaser of the property. It would be an empty formality to find, as we have, that the property should have been released from the mortgage and then to hold plaintiff personally liable for the debt. The statute does not contemplate nor countenance such inconsistencies.
Moreover, it appears appropriate to point out that, while individuals cannot by their conventions,, derogate from the force of laws made for the preservation of public order or good morals, yet in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not. contrary to the public good. LSA-C.C. Art. 11. We infer from their actions this is what they intended to do.
From the testimony of plaintiff’s assistant secretary and division operations manager, it can only be concluded that, in the confection of the note and chattel mortgage sued upon, plaintiff intended toj and did, become obligated to the purchaser on the sale of any portion of the mortgaged property to release it from the effects of the mortgage when it received the avails of the selling price. Plaintiff admitted receiving the sum of $10,000, as aforesaid, which we have found to have been derived from the sale of the tractor by Lee to Aaron.
For the reasons assigned, the judgment appealed, so far as relates to Aaron Ford Tractor Company, Inc., should be, and it is hereby, annulled, avoided, reversed, and set aside; and, as to this defendant, plaintiff’s demands are accordingly rejected and its suit dismissed at its costs.
Reversed and plaintiff’s demands rejected.