**MARSHALL NATIONAL BANK
and J.L. Clark**

v.

**NORWEL EQUIPMENT COMPANY**

v.

**Gordon WILLIAMS, third
party defendant.**

Civ. A. No. 83–0149.

United States District Court,
W.D. Louisiana,
Shreveport Division.

April 30, 1985.

Lawrence L. Jones, Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for plaintiff.

Bobby S. Gilliam and Jerald N. Jones, Wilkinson, Carmody & Gilliam, Shreveport, La., for defendant.

Gordon Williams, Marshall, Tex., pro se.

## MEMORANDUM RULING

STAGG, Chief Judge.

Plaintiff sues to recover the unpaid balance due on a promissory note executed by Gordon Williams to procure funds for the purchase of logging equipment from J.L. Clark, including a John Deere 440–B log skidder. A mortgage on all of the equipment secured the debt and it was guaranteed by Mr. Clark, as well. When Mr. Williams failed to pay the installments when due, the bank exercised its option to declare the unpaid balance of $41,320.48 due immediately. In an effort to satisfy the debt, plaintiff attempted to foreclose the mortgage on the log skidder and found it had been sold to defendant as a trade-in on a replacement skidder. Relying upon the provisions of La.R.S. 9:5362, plaintiff now seeks to recover the unpaid balance from defendant. Defendant has filed a motion to dismiss for lack of subject matter jurisdiction contending that the amount in controversy is only $2,750 thus destroying the presence of the requisite jurisdictional amount. Plaintiff opposes the motion.

Louisiana Revised Statute 9:5362 provides:

It shall be unlawful for a resident of any parish to purchase the movable property described in R.S. 9:5351 from any nonresident of such parish, without first obtaining an affidavit from the nonresident that there is no mortgage on the property, nor any money due for the purchase price thereof, and the purchaser who shall buy the movable properties without having obtained the affidavits shall be personally liable to the creditor for the debt secured by the property.

It is the contention of defendant that the value of the log skidder at the time it was traded in was only $2,750 and that the only debt secured by the property was this amount.

■ A motion to dismiss for want of jurisdictional amount should not be granted unless it appears to a legal certainty that plaintiff cannot recover the amount claimed in good faith. *Johns-Manville Sales Corporation v. Mitchell Enterprises, Inc.*, 417 F.2d 129 (5th Cir.1969). At the outset it must be noted that plaintiff has not demanded an amount so excessive as to warrant the conclusion that its claims are not pressed in good faith. Instead, plaintiff demands the unpaid balance of the debt founded upon its conclusion that the statute authorizes such an award. The question is, therefore, whether the statutory language creates a legal certainty that the mortgagee is entitled to recover the amount of the indebtedness rather than the actual value of the mortgaged property.

■ Initially, it must be noted that La.R.S. 9:5362 must be considered "highly technical and ... strictly construed...." *C.I.T. Corporation v. J.B. Lee Tractor & Implement Company*, 240 So.2d 747 (La. App.1970). See also, *Cullen Thompson Motor Company v. Sullivan & Phillips, et al*, 126 So. 456 (La.App.1930). Notwithstanding the strict construction given to the statute, the few cases construing it indicate that the statutory language means precisely what it says. See, *Harris Finance v. Fridge et al*, 55 So.2d 707 (La. 1951). In *Harris*, the Supreme Court refused to accept the purchaser's argument that the rate of interest provided by law should be awarded rather than the higher interest rate and attorney's fees provided in the mortgage instrument. The court noted that the higher rates were "an integral part of the debt contracted to by the parties and secured by the property. The statute provides that the purchaser shall be personally liable to the creditor for the debt secured by the property." *Id.* at 709. Thus, it appears that it is the amount of the unpaid debt rather than the value of the property which controls in determining the amount in controversy. Other support for this conclusion is found in *C.I.T. Corporation, supra.* In that case, the court refused to find § 5362 applicable but noted

that the effect of the statute would be "to hold [the purchaser] personally liable for the debt." *Id.* at 750. Although the result seems somewhat harsh, the language of the statute is clear and the few cases construing it have not deviated from its unambiguous terms. Thus, in an action under § 5362 the amount in controversy is the unpaid balance of the debt secured by the property, not the value of the property. Arrival at this conclusion, does not, however, resolve the question of whether there can be any dispute that an unpaid balance still remains. Before addressing this issue, it is first necessary to determine whether the law of Texas or Louisiana applies.

Defendant has also filed a motion *in limine* asking the court to hold that Texas law should govern the issues in this suit. It is the contention of defendant that all of the acts relevant to the disputed transaction occurred in Texas and that, under interest analysis, this matter should be governed by the law of Texas. Conversely, plaintiff argues that the determinative transaction in this suit occurred in Louisiana. Neither party disputes that the mortgage given by Mr. Williams to the bank was executed in Texas and that the validity and effect to be given the mortgage must be governed by Texas law. Nor do the parties dispute that plaintiff has its principal place of business in Texas and that defendant is a Louisiana corporation with its principal place of business in Shreveport, Louisiana. Aside from an objection to the property description listed in the financing statement, defendant does not contend that the mortgage was invalid under Texas law. One of the requirements of the statute is that plaintiff must have a valid and enforceable mortgage to avail itself of the provisions of the statute, see, *Hub City Motors, Inc. v. Brock,* 71 So.2d 700 (La.App.2d Cir.,1954); *C.I.T. Corporation v. J.B. Lee Tractor & Implement Company,* 240 So.2d 747 (La.App.2d Cir. 1970). Defendant has challenged the validity of the mortgage contending that it does not describe with adequate specificity the property mortgaged, in particular, the log skidder. The security agreement describes the mortgaged log skidder as "one John Deere 440–B log skidder with new winch and cable." Defendant argues that the security interest held by plaintiff is defective because the mortgage gives descriptions and serial numbers of all equipment except the log skidder. In support of its position, plaintiff cites a Louisiana case. Louisiana law has absolutely no bearing on this issue. Instead, the validity of the mortgage must be evaluated in light of Texas law. To be enforceable against the debtor or third parties, a security interest must be evidenced by a security agreement signed by the debtor which describes the collateral. V.T.C.A. § 9.110. Section 9.110 of the Texas Uniform Commercial Codes provides:

Except as provided in Sub-sections (c) and (f) of § 9.402, any description of personal property or real estate is sufficient for the purposes of this chapter whether or not it is specific if it reasonably identifies what is described.

The comment under this section explains the purpose of the statute as follows:

The requirement of description of collateral ... is evidentiary. The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule, courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test. The same test of reasonable identification applies where a description of real estate is required in a financing statement. See Section 9–402.

In construing the description necessary to validate a mortgage the court in *Francis v. Reed,* 428 S.W.2d 356 (Tex.Civ.App.1968) concluded that a description listed as "one 1963 Ford 6000 tractor" was sufficient:

To suggest inquiry by appellee which, if pursued, would have disclosed the property covered by the mortgage was the

same tractor upon which he was accepting the mortgage.

*Id.* at 358.

*Francis* was cited with approval in *McGehee v. Exchange Bank & Trust Company,* 561 S.W.2d 926 (Tex.Civ.App.1978) which stated the general rule as follows:

> As between the mortgagee and third parties, it is not essential that the description be so specific that the property may be identified by it alone, such description suggests inquiries or means of identification, which, if pursued, will disclose the property covered by the mortgage.

*Id.* at 932.

*McGehee* was a suit by the bank to recover mortgaged property which had been converted. The description contained in the financing statement reflected several typographical errors in relation to the year in which the property was manufactured, as well as inaccurate lettering on the engine numbers. Notwithstanding these discrepancies, the court concluded that the inaccuracies were minor and would not mislead a person examining the statement.

■ In this case, the description contained in the financing statement describes both the type and item of property mortgaged, a John Deere 440–B log skidder. Upon inquiry by Norwel, it could have been easily discovered that the log skidder was, in fact, the one mortgaged to the bank. Consequently, the description contained in the financing statement is not so inadequate as to render the mortgage invalid. The question, instead, is whether a valid Texas mortgage will be given the same effect as one confected in Louisiana.

■ Defendant correctly notes that a federal court must apply the choice of law rule of the forum state, *Klaxon Company v. Stentor Electric Manufacturing Company,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In determining which state law applies in a given case, Louisiana follows the interest analysis method. *Jagers v. Royal Indemnity Company,* 276 So.2d 309 (La.1973). Interest analysis requires the court to evaluate the policy considerations of interest to the respective jurisdictions whose law could possibly apply in a particular case. Louisiana has chosen, through La.R.S. 9:5362, to give greater protection to a mortgagee than to innocent purchasers of mortgaged items. Of course, the statute was formulated to protect Louisiana mortgagees. Although perhaps not adverse to extending protection to foreign mortgagees, Louisiana has no particular interest in affording greater protection to the rights of foreign mortgagees than the law of their domicile provides. Conversely, as a matter of policy, Texas has elected to adopt the Uniform Commercial Code which provides no remedy similar to that contained in La.R.S. 9:5362. Consequently, Texas has no interest in seeing that its resident mortgagees receive the protection afforded by the Louisiana statute. Despite Louisiana's apparent lack of concern in protecting the rights of foreign mortgagees, one other factor must be considered in determining whether a conflict exists. As the court explained in *General Motors Acceptance Corporation v. Nuss,* 196 So. 323 (La.1940), Louisiana recognizes the validity of foreign mortgages even though they are not recorded in this state. The court's conclusion was based in part upon the following policy considerations:

> It would be an ungracious, if not an impolitic act, for the courts of this state to refuse to reciprocate the generous comity of the many states which recognize the obligation of interstate courtesy upon this subject.

*Id.* at 327.

Relying upon *Nuss,* the court in *Pacific Finance Loans v. Guidry,* 69 So.2d 56 (Orl.La.App.1954), held that Louisiana will extend the application of La.R.S. 9:5362 to foreign mortgages not recorded in this state but valid under the laws of the state in which they were executed.

■ In reviewing all of the competing policy considerations in this case, the court concludes that a false conflict exists. In *Jagers,* a false conflict was defined as existing when only a single state has an interest in the application of its laws and

that the other state involved has no interest. *Id.* at .311. In this situation, Louisiana applies its own laws to foster predictability and certainty in the law. *Id.* at 312. Defendant suffers no hardship in the application of Louisiana law. Norwel is a Louisiana corporation with its principal place of business in this state. It is specious to suggest that Norwel does not expect to be governed by the laws of its domicile. Accordingly, the law of Louisiana determines whether plaintiff has met the statutory requirements of La.R.S. 9:5362. The law of Texas will govern the validity and effect of the mortgage.

Defendant argues that it bears no liability to the bank since Williams' debt has been satisfied by the guarantor, Clark. Plaintiff resists this contention arguing it is without merit since Clark became subrogated to the rights of the bank to collect the balance of the debt from Williams. As part of a settlement with Clark, however, the bank was assigned Clark's right to recover the balance of the unpaid debt. The court must consider, therefore, not whether subrogation has occurred but what rights were enjoyed by Clark and then the bank. In the pretrial order, counsel stipulated the following facts:

> (3) The said note which was executed by Mr. Gordon Williams and Mr. J.L. Clark, as a "co-maker", on February 13, 1979 has now been marked "cancelled" by The Marshall National Bank.

> (5) The Uniform Commercial Code financing statement securing the note referred to herein is no longer in force and effect as of this date.

The background information underlying these stipulated facts is provided in plaintiff's proposed findings of fact and conclusions of law. The bank concedes that Williams, unable to pay the balance due on the note, turned the mortgaged equipment over to Clark who executed a new note in favor of the bank dated August 6, 1981. According to plaintiff:

> After execution of the note on August 6, 1981, Clark, over the course of approx-

imately two years, reduced the principal of the Williams' liability and paid the interest which continued to accrue on the unpaid balance. The Williams liability was last renewed by Clark February 11, 1983, when he executed a note for the payment thereof in the amount of $23,-463.30, which represented the remaining unpaid principal balance, plus accrued interest. In a settlement with the bank on July 15, 1983, Clark paid the sum of $80,000 for application to his total indebtedness of $234,597.36 to the Bank, including the indebtedness incurred as a guarantor of Williams' loan, and as part of his settlement subrogated the Bank to his rights of recovery against Williams and Norwel. The sum of $25,068.62 was applied against the February 11, 1983 note representing full payment of the remaining principal and accrued interest on the Williams liability.

Plaintiff's amended proposed findings of fact and conclusions of law, page 10-11. The bank is, therefore, seeking to assert the rights of Mr. Clark as the result of the subrogation. It does not matter whether the law of Louisiana or Texas is applied to determine the scope of the bank's rights as a result of subrogation. In both jurisdictions, subrogation constitutes the substitution of another person in place of the creditor so that he succeeds to the rights of the creditor, although his rights are no greater. See, *Means v. United Fidelity Life Insurance Company,* 550 S.W.2d 302 (Tex.Civ. App.1977), ref. n.r.e.; *Williams v. Feliciana Finance Company, Inc.* (La.App.1975) 316 So.2d 833 *cert. denied,* 320 So.2d 913 (1975). In settling with Mr. Clark, the bank cancelled the note which was secured by the financing statement. Since the mortgage has expired and the debt to the bank has been extinguished, there is, therefore, no "debt secured by the property." Whatever rights the bank may have against Mr. Williams as a result of subrogation do not automatically transfer to its action against Norwel. Norwel's liability to the bank is statutory and not contractual. As explained earlier, § 5362 must be

strictly construed. The language of the statute imposes liability upon a purchaser of mortgaged items only to the extent of the unpaid balance of the debt secured by the property. If the debt and the mortgage no longer exist, no liability can attach. In *C.I.T. Corporation, supra,* the court was presented with a closely analogous situation. In that case defendant purchased three loggers and obtained a loan from plaintiff giving in exchange a promissory note secured by a chattel mortgage on the loggers. The mortgagor ultimately sold the loggers to two purchasers who failed to comply with 9:5362. The trial court held the two subsequent purchasers liable for the balance of the principal indebtedness. The appellate court reversed on the following facts. The mortgagor sold one logger to J.B. Lee Tractor & Implement Company who in turn sold it to another. The second purchaser used the proceeds of the sale to satisfy the debt to plaintiff under the promissory note. The court found that plaintiff should have cancelled the mortgage and that it had no action against the purchaser. Specifically, the court explained:

> The statute under which plaintiff seeks to hold Aaron [the second purchaser] personally liable for Lee's debt is highly technical and must be strictly construed under the facts of this case. To give it literal effect would be most inequitable and work an undue hardship on an innocent purchaser of the property. It would be an empty formality to find as we have, that the property should have been released from the mortgage and then to hold plaintiff personally liable for the debt. The statute does not contemplate nor countenance such inconsistencies.

*Id.* at 750.

To allow the bank, standing in the shoes of Mr. Clark, to recover the amount paid by him would, in effect, make Norwel the guarantor of the original indebtedness. Section 5362 was not designed to accomplish this end. Its purpose is to allow a mortgagee to protect the security given for a debt. Logically, if the debt no longer exists, the security is no longer necessary to insure repayment. Simply put, § 5362 is not a statutory safety net which allows creditors to ameliorate the losses occasioned by delinquent debtors. It appears, therefore, to a legal certainty, there is no amount in controversy. The facts already in the record lead to the inescapable conclusion that plaintiff simply cannot meet the statutory requirements to maintain a cause of action under La.R.S. 9:5362. Accordingly, plaintiff's demands against defendant will be DISMISSED. Similarly, in the absence of liability on the part of Norwel, its demands against Mr. Williams will be DISMISSED.

An order consistent with the terms of this ruling shall issue herewith.