The **MARSHALL NATIONAL BANK**
**and J.L. Clark, Plaintiffs-Appellants,**

v.

**NORWEL EQUIPMENT COMPANY,**
**Defendant-Appellee.**

**No. 85–4377.**

United States Court of Appeals,
Fifth Circuit.

April 21, 1986.

---

Bobby S. Gilliam, Wilkinson, Carmody & Gilliam, Jerald N. Jones, Shreveport, La., for defendant-appellee.

Gordon Williams, pro se.

Lawrence L. Jones, Shreveport, La., for plaintiffs-appellants.

Before JOLLY, JONES, Circuit Judges, and HUNTER,* District Judge.

EDWIN F. HUNTER, Jr., District Judge:

This Louisiana diversity action was filed by the Marshall National Bank on January 12, 1983, seeking recovery for the entire balance allegedly due on an installment note executed on February 13, 1979, in the original principal sum of $82,063.68. The note was executed by Gordon Williams and J.L. Clark as co-makers. Defendant, Norwel Equipment Company, was not in any manner a party to the transaction or a signatory on the note. The sole and only cause of action stated by the plaintiffs against Norwel is premised on La.Rev.Stat. Ann. § 9:5362 (West 1983).[1] Pursuant to that statute, plaintiffs contend that Norwel is liable for the entire principal balance of the note because it accepted on trade-in an inoperable log skidder valued at $2,750.00. The Trial Court issued a written ruling granting a Motion to Dismiss. *Marshall National Bank v. Norwel Equipment Co.*, 607 F.Supp. 1265 (W.D.La.1985). We AFFIRM.

We are presented with a confusing sequence of shifting creditor and subrogation rights. After Williams defaulted, the Bank both accelerated the note and demanded the logging equipment. Williams informed the Bank that pursuant to a trade-in purchase, he had sold the log skidder, then inoperative and valued at $2,750.00, to Norwel. Norwel had failed to obtain an affidavit from Williams attesting that "there is no mortgage on the property, nor any money due for the purchase price thereof[.]"[2] La.Rev.Stat.Ann. § 9:5362 (West 1983).

It became evident that Williams would be unable to pay the balance due on the note. The Bank authorized Williams to turn the mortgaged equipment over to Clark who in turn signed his own note in favor of the Bank dated August 6, 1981. Clark, over the course of approximately two years, reduced the principal of the Williams' liability and paid the interest which continued to accrue on the unpaid balance. *In a settlement with the bank* on July 15, 1983, Clark paid the sum of $80,000 for application to his own total indebtedness of $234,597.36 to the Bank, including the indebtedness incurred as a guarantor of Williams' loan, and as part of his settlement subrogated the Bank to his rights of recovery against Norwel. The note of February 13, 1979 by Williams and Clark was marked "cancelled". The mortgage protecting it was

---

* District Judge of the Western District of Louisiana, sitting by designation.

1.  § 9:5362 states:
    It shall be unlawful for a resident of any parish to purchase the movable property described in R.S. § 9:5351 from any nonresident of such parish, without first obtaining an affidavit from the nonresident that there is no mortgage on the property, nor any money due for the purchase price thereof, and the purchaser who shall buy the movable property without having obtained the affidavit, shall be personally liable to the creditor for the debt secured by the property.

2.  Although not material to the issues presented to this Court, the defendant has consistently and repeatedly alleged that prior to the sale, a representative of Norwel and Mr. Gordon Williams physically went to the Marshall National Bank, and in a face-to-face meeting obtained the specific approval of the Bank to accept an old "junk" log skidder on trade-in (valued at only $2,750.00) and to sell the newer log skidder.

permitted to expire. The district judge concluded:

> In settling with Mr. Clark, the bank cancelled the note which was secured by the financing statement. Since the mortgage has expired and the debt to the bank has been extinguished, there is therefore no "debt secured by the property." Whatever rights the bank may have against Mr. Williams as a result of subrogation do not automatically transfer to its action against Norwel. 607 F.Supp. at 1270.

In analyzing the district court's reasoning, we view this case through the prism of *Finance Security Co. v. Williams*, 42 So.2d 310, (La.Ct.App.1949) *reh'g denied*, 42 So.2d 902 (La.Ct.App.1949). There, one J.W. Williams executed a note to secure the purchase of an automobile. The creditor endorsed the note in blank and discounted it with Finance Security. Williams later traded the car to Smit and Dillard, used car dealers. The dealers, however, failed to obtain from Williams the affidavit required by § 9:5362 in its previous version, which in substance bears no difference from its present form. Because debt remained on the note, Finance Security sued both Williams and Smit and Dillard under § 9:5362's predecessor.

The *Williams* court held that Smit and Dillard "became liable for the same thing that Williams was liable, that is the whole debt that was due Finance Security Co., Inc., by Williams. Each of them, Williams, Smit and Dillard would be made to pay that whole debt and payment by anyone would exonerate the others." 42 So.2d at 312.

Further, the car dealers could not look to the note's endorser in warranty because under the statute the dealers and buyer were subjected to statutory liability, against which there was no warranty arising on the part of the note's endorser. 42 So.2d at 314.

Under the Bank's theory in our case, both the buyer (Williams) and the equip-

ment dealer (Norwel) became solidarily liable for the debt under § 9:5362. On this point the Bank is supported by Louisiana law. *Finance Security Co. v. Williams*, 42 So.2d at 312–313; *see also Harris v. Fridge*, 55 So.2d 707, 709 (La.1951). However, no such support exists for the remainder of the Bank's contentions.

■ Section 9:5362 is penal in nature and derogates from the common law right to buy and dispose of property without restriction. *Cullen Thompson Motor Co. v. Sullivan & Phillips*, 12 La.App. 486, 126 So. 456 (1930), *overruled on other ground*, *General Motors Acceptance Corporation v. Nuss*, 195 La. 209, 196 So. 323 (La.1940), *see also C.I.T. Corporation v. J.B. Lee Tractor & Implement Company*, 240 So.2d 747, 750 (La.Ct.App.1970). For this reason, and especially because § 9:5362 can generate harsh results serving questionable purposes,[3] *see* Note, *Security Devices— Personal Liability of Third Party Purchasers Under Revised Statutes 9:5362*, 12 La.L.Rev. 516 (1952); Daggett, *The Chattel Mortgage In Louisiana*, 13 Tul. 19, 30 (1938), it "must be strictly construed under the facts of this case [,]" *C.I.T. Corporation*, 240 So.2d at 750; *see also Becnel v. Answer, Inc.*, 428 So.2d 539, 543 (La.Ct. App.), writ *not consid'd*, 433 So.2d 158 (La.1983), so that it is effectuated only so far as is necessary to accomplish its intended purpose. *Cf., Succession of Goode*, 425 So.2d 673, 677 (La.1982) (prohibitory statute designed to prevent attempts to tie up property in perpetuity was strictly construed by court to effectuate its intended purpose).

■ The obvious purpose of the statute is to protect the rights of "the creditor for the debt secured by the property [,]" § 9:5362; *see also Note*, 12 La.L.Rev. at 518, by forcing buyers who purchase from sellers not residing in the buyer's parish "to look for outstanding debt secured by the property and thus protect lenders from

---

**3.** The balance allegedly due is $17,856.58. Norwel received on trade-in a "junk" log skidder valued at only $2,750.00. Plaintiff concedes, as

we think it must, that under it's interpretation, if the balance due had been a million dollars, then Norwel might be held for that amount.

losing track of their collateral." H. Sachse, *Report to the Louisiana Law Institute On Article Nine of the Uniform Commercial Code*, 41 Tul.L.Rev. 785, 808 (1967); *see also Southland Securities Co. v. Thieme*, 142 So. 375, 376 (La.Ct.App. 1932). A creditor of debt secured by property cannot practically follow that property around and prevent its unauthorized transfer, especially when it is taken out of the parish wherein the mortgage is recorded. The buyer of such property, however, can easily request a § 9:5362 affidavit from the seller, and therefore is in a better position to prevent statutory violations than the creditor who will often find out about the transfer after the fact.

There is certainly no justification for departing from the traditional and established standards of strict construction. The Bank discovered the transferred property. It properly invoked § 9:5362. The Bank exploited a second, concurrent mode of recovery (calling Clark in warranty), then tried to extend the first mode to facilitate the transfer of the statute's protections to others. This was not necessary to effectuate it's essential purpose, which was to provide for the mortgaging of movable property and to protect the rights of the mortgagee. No other purpose could credibly be ascribed. The district court properly declined to recognize the attempted extension by subrogation.

The legal and factual basis for the district judge's conclusion was convincingly correct. He put it this way:

> To allow the bank, standing in the shoes of Mr. Clark, to recover the amount paid by him would, in effect, make Norwel the guarantor of the original indebtedness. Section 5362 was not designed to accomplish this end. Its purpose is to allow a mortgagee to protect the security given for a debt. Logically, if the debt no longer exists, the security is no longer necessary to insure repayment. Simply put, § 5362 is not a statutory safety net

which allows creditors to ameliorate the losses occasioned by delinquent debtors. 607 F.Supp. at 1271.

Stated differently, although the Bank was entitled to bring suit under § 9:5362 and invoke its protections, it chose the easier route and collected the debt from Clark. The Bank's choice to collect payment from Clark exhausted the limited purpose of § 9:5362. The Bank no longer needed the statute's protection when it collected the debt. It mooted its § 9:5362 claim and had nothing to pass in subrogation to Clark.[4]

The judgment of the district court is AFFIRMED.

---

4. There naturally arise questions concerning Clark's rights. The Bank litigates in his name as it's purported assignee. Clark never became subrogated to the Bank's 9:5362 claim and had no § 9:5362 claim to assign.