# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-926


**FARMERS-MERCHANTS BANK & TRUST COMPANY, ET AL.**

**VERSUS**

**SOUTHERN STRUCTURES, LLC, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 76722
HONORABLE VINCENT J. BORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**Ward F. Lafleur**
**Mahtook & Lafleur, L.L.C.**
**Post Office Box 3089**
**Lafayette, Louisiana 70502**
**(337) 266-2189**
**Counsel for Defendant/Appellant:**
 **Nucor Building Systems Sales Corporation**

**Allan L. Durand**
**Attorney at Law**
**235 La Rue France**
**Lafayette, Louisiana 70508**
**(337) 237-8501**
**Counsel for Plaintiff/Appellee:**
 **Farmers-Merchants Bank & Trust Company of Breaux Bridge**

**Keith E. Thibodeaux**
**Attorney at Law**
**422 South Main Street**
**St. Martinville, Louisiana  70582**
**(337) 394-3034**
**Counsel for Defendant/Appellee:**
  **Southern Structures, LLC**

**James Lawhern**
**MH Precision Systems, Inc.**
**Post Office Box 609**
**Florence, Alabama  35631**
**Counsel for Defendant/Appellee:**
  **MH Precision Systems, Inc.**

**KEATY, Judge.**

Defendant, Nucor Building Systems Sales Corporation, appeals the trial court's judgment in favor of Plaintiff, Farmers-Merchants Bank & Trust Company of Breaux Bridge (FM Bank). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Southern Structures, LLC was in the business of manufacturing components for metal buildings. Southern Structures secured multiple loans[1] from FM Bank between 2005 and 2007 to purchase various large items of equipment, including a Franklin flange unit, a type of metal fabricating equipment used in the construction of various metal items. At all relevant times, FM Bank held a first perfected security interest in the flange unit.

In November 2009, negotiations commenced between Nucor, Southern Structures, and MH Precision Systems, Inc. MH Precision was allegedly acting as the agent of Southern Structures and the broker for the sale of the flange unit. In December 2009, Southern Structures sold the used flange unit to Nucor. Nucor subsequently had the equipment shipped to its plant in South Carolina. Southern Structures defaulted on its loan with FM Bank, and when FM Bank attempted to inventory its collateral, it discovered that the flange unit was gone. FM Bank later learned that the flange unit had been sold and was in possession of Nucor.

FM Bank sued Southern Structures, MH Precision, and Nucor for the return of the equipment and damages. Nucor filed a cross-claim against MH Precision, asserting that it had purchased the flange unit from MH Precision who Nucor

---

[1] Plaintiff's exhibits and testimony on behalf of Mark Sibley, an FM Bank employee and senior lender, show that promissory notes were executed by Southern Structures in favor of FM Bank on the following dates and in the following amounts: (1) June 7, 2005, in the amount of $4,000,770.00; (2) August 14, 2007, in the amount of $750,020.00; (3) August 14, 2007 in the amount of $300,045.00; and (4) August 14, 2007, in the amount of $1,469,092.77.

believed was either the seller of the flange unit or the agent of Southern Structures as the seller. Nucor also filed a motion for summary judgment, claiming that it purchased the equipment from MH Precision in good faith pursuant to La.R.S. 10:1-201(9) and as such was not liable to FM Bank. The trial court denied Nucor's motion for summary judgment. The case then proceeded to trial on the merits wherein the trial court rendered judgment in favor of FM Bank and against Nucor, MH Precision, and Southern Structures, jointly, severally, and in solido, in the amount of $276,000.00 together with legal interest from the date of judgment and all court costs.

Nucor is before this court alleging three assignments of error and one alternative assignment of error. Nucor contends that: (1) the trial court erred as a matter of law when it held Nucor personally liable for damages and/or in finding Nucor in bad faith regarding the purchase of the flange unit; (2) the trial court erred as a matter of law when it found it had subject matter jurisdiction of the *in rem* action because Nucor is not subject to personal liability and neither *in rem* nor *quasi in rem* jurisdiction existed over the flange unit because it is not located in Louisiana; and (3) the trial court erred in finding that Nucor was not a buyer in the ordinary course of business entitled to keep the flange unit free of FM Bank's security interest because MH Precision was the seller of the flange unit, the sale occurred in MH Precision's ordinary course of business, and Nucor was a good faith purchaser. Alternatively, and only in the event that this court finds bad faith premised on some type of negligence standard suggested by the trial court, Nucor contends that the trial court erred in finding Nucor liable in solido with the other Defendants, Southern Structures and MH Precision, and instead, should have allocated fault under La.Civ.Code art. 2324(B).

2

**LAW**

In *Rosell v. Esco*, 549 So.2d 840, 844 (La.1989) (citations omitted), the supreme court held:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. . . .
>
> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's finding; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

Additionally, appellate courts review the interpretation of statutes de novo and render judgment on the record without deference to the legal conclusions of the trial court. *Cleco Evangeline, LLC v. La. Tax Comm'n*, 01-2162 (La. 4/3/02), 813 So.2d 351.

**DISCUSSION**

**Assignment of Error Number One**

*Did the trial court err in finding that La.R.S. 10:9-315(a)(3) created a statutory avenue for a secured party to hold a third-party purchaser personally liable for damages?*

Nucor contends that the trial court erred in finding it personally liable to FM Bank. Nucor argues that the trial court erred in finding that La.R.S. 10:9-315(a)(3) created a statutory avenue for a secured party to hold a third-party purchaser personally liable for damages. Louisiana Revised Statutes 10:9-315(a)(3) provides:

> **(a) Disposition of collateral: continuation of security interest; proceeds.** Except as otherwise provided in this Chapter:

. . . .

> (3) a purchaser of collateral incurs no personal liability on account of an unauthorized transfer unless he has failed to act in good faith.

Nucor takes issue with the trial court's statement that because La.R.S. 10:9-315(a)(3) "clearly state[s] that a 'good faith' purchaser [of collateral] incurs no personal liability, thus by inference, a bad faith purchaser under the statute incurs personal liability." Nucor argues that La.R.S. 10:9-315(a)(3) does not support the conclusion that only upon a showing of bad faith, which Nucor believes is a relaxed standard of proof, does a purchaser in an unauthorized transaction incur personal liability.

In support, Nucor contends that under La.R.S. 10:9-315(a)(3)'s predecessor statute, La.R.S. 10:9-306(2), a high burden of proof was required to impose personal liability on a purchaser in an unauthorized transaction. The predecessor statute, La.R.S. 10:9-306(2), provided that the buyer had no personal liability "unless he has conspired with the debtor to defeat the interest of the secured party." In 2001, the Louisiana legislature amended the statute to provide for no personal liability of a buyer "unless he has failed to act in good faith." La.R.S. 10:9-315(a)(3). Despite the revision, Nucor contends that the legislature did not intend to change the law to lessen the burden of proof required to hold a third-party purchaser personally liable for damages under the amended statute. Rather, Nucor alleges that the correct standard is a finding of both conspiracy and willful/purposeful conduct on the part of the purchaser to defraud or to defeat the bank's security interest, which cannot be supported based on the evidence.

4

In opposition, FM Bank and Southern Structures contend that the evidence supports the trial court's judgment on this point.

We find that Nucor's argument lacks merit. The requirement of a conspiracy was dropped under the amended statute, La.R.S. 10:9-315(a)(3). We believe that such a change is significant: the original statute required the virtual equivalent of a crime, and the amendment reduced that to merely a lack of good faith. We interpret this amendment to mean that the legislature intended to reduce the burden of proof required to impose personal liability on the buyer. It is a core principle of legislative interpretation that, when the legislature amends a law to word it differently, the courts must presume that the legislature intended to change the law. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294.

Accordingly, we find that the trial court did not err in finding that La.R.S. 10:9-315(a)(3) created a statutory avenue for a secured party to hold a third-party purchaser personally liable for damages.

***Did the trial court err in finding that Nucor's knowledge of FM Bank's security interest in the flange unit amounted to bad faith for purposes of personal liability under La.R.S. 10:9-315(a)(3)?***

In further support of its argument that the trial court erred in finding it personally liable to FM Bank, Nucor contends that the trial court erred in finding that Nucor's knowledge of FM Bank's security interest in the flange unit amounted to bad faith for purposes of personal liability under La.R.S. 10:9-315(a)(3). In opposition, FM Bank and Southern Structures contend that the evidence supports the trial court's judgment on this point.

Louisiana Revised Statutes 10:9-315(a)(3) provides for no personal liability on a purchaser, such as Nucor, unless it has failed to act in good faith. The trial

5

court concluded that Nucor and MH Precision, together with Southern Structures, acted in bad faith to attempt to deprive FM Bank of its security interest. The following evidence supports the trial court's conclusion.

The seller, Southern Structures, was either out of business or going out of business at the time of the sale. In negotiating the sale, Larry Blanchet, the owner of Southern Structures, Jim Lawhern, the owner of MH Precision, and Rich Huber and Glenn Wilber, Nucor employees, met at Southern Structures' yard in Broussard, Louisiana. All agreed that Nucor would purchase the flange unit and all had knowledge that FM Bank had a lien on the equipment. Nucor was made aware that bank consent was necessary when it received an email from Lawhern that Southern Structures had to "get with the bank and give me an asking price." However, the negotiations continued, and Lawhern disclosed to Nucor in an email that "I spoke with the owner. He thinks he can keep the bank at bay for a month." Southern Structures had paid over $500,000.00 for the flange unit but was willing to sell it for only 60% of that amount, despite the fact that there was only about six months of use on the equipment.

According to the supreme court, the evidence must be reviewed in the light which most favorably supports the judgment. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337 (La.1993). "Courts can only take judicial notice of a fact that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence[.]" *Walker v. Halliburton Servs., Inc.*, 93-722, p. 3 (La.App. 3 Cir. 3/1/95), 654 So.2d 365, 368, *writ denied*, 95-1507 (La. 9/22/95), 660 So.2d 481.

Based on the evidence, the trial court reasonably concluded that Nucor knew about a lien and acted to deprive FM Bank of its security interest. Nucor, through

its employee, Huber, admitted that it received the email regarding "keep[ing] the bank at bay." Although several Nucor representatives testified at trial, there is no evidence in the record to explain why the Nucor representatives did not make further inquiries about the lien with FM Bank. Given the foregoing, it is reasonable to conclude that Nucor was not in good faith in this transaction.

We find that the trial court did not err in finding that Nucor's knowledge of FM Bank's security interest in the flange unit amounted to bad faith for purposes of personal liability under La.R.S. 10:9-315(a)(3). Nucor's assignment of error is without merit.

### Assignment of Error Number Two

In its second assignment of error, Nucor contends that the trial court erred in finding that subject matter jurisdiction existed over the claim at issue. Nucor alleges that FM Bank does not have a claim for money damages premised on *in personam* liability against Nucor. Insofar as FM Bank's petition seeks a lien right on the flange unit at issue, Nucor contends that FM Bank's claim is against the property itself, without which there would be no recovery against Nucor. Since the flange unit is located at the Nucor plant in South Carolina, Nucor alleges that the trial court lacked subject matter jurisdiction over such a claim against the property because neither *quasi in rem* nor *in rem* jurisdiction existed.

In opposition, FM Bank and Southern Structures contend that the trial court had subject matter jurisdiction of the matter via personal jurisdiction.

Louisiana Code of Civil Procedure Article 6(A) provides that personal jurisdiction "is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding." One of the specific methods by which a court can acquire personal jurisdiction is "[t]he submission of the party

7

to the jurisdiction of the court . . . by the waiver of objection to jurisdiction." La.Code Civ.P. art. 6(A)(3). When a foreign corporation makes a general appearance in a lawsuit in Louisiana and files an answer, it submits itself to the jurisdiction of the Louisiana courts with respect to that litigation. *Hancock Bank v. Alexander*, 344 So.2d 21 (La.App. 3 Cir. 1977).

In the present case, the Nucor representatives physically came to Louisiana to examine the equipment prior to purchasing it. FM Bank subsequently filed this suit against Nucor claiming damages and seeking recognition of its security interest in the equipment. Nucor filed an answer, made a general appearance, and never objected to the jurisdiction. Therefore, we find that the trial court had personal jurisdiction over Nucor. Nucor, having submitted itself to the personal jurisdiction of the trial court, is subject to having the issue of FM Bank's security interest resolved by the trial court.

The real issue raised in this assignment of error, however, is whether the trial court had jurisdiction over the flange unit for the purpose of recognizing a lien. This issue is not covered by La.Code Civ.P. art. 6 or La.Code Civ.P. art. 8.[2] Rather, this issue is covered by the Uniform Commercial Code (UCC). In that regard, "Louisiana enacted Article 9 of the [] (UCC) as Chapter 9 of the Louisiana Commercial Laws, effective on January 1, 1990." *Tetra Applied Techs, Inc. v. H.O.E., Inc.*, 03-1523, p. 4 (La.App. 3 Cir. 5/26/04), 878 So.2d 708, 710. Chapter 9 "regulates the creation of conventional real security in most movables and supplants the law of pledge and chattel mortgage with a security interest." *Id.* at 711. "Chapter 9 permits possession to be gained or lost according to an agreement

---

[2] Louisiana Code of Civil Procedure Article 8 discusses *in rem* jurisdiction, otherwise known as jurisdiction over property.

between the parties without otherwise affecting the rights of the secured party" "[b]y separating the consequences of possession from the privilege or priority given by the security." *Id.*

The general rule in Louisiana is that the validity and effect of a lien or privilege on movable property are determined by the law of the state where the movable property was located at the time the lien was created. *Figuero v. Figuero*, 303 So.2d 801 (La.App. 3 Cir. 1974). The highest courts of many states have spoken upon the subject, and the weight of authority is that a valid security interest which is recorded in the state where it is executed continues to have the same effect when the mortgaged property is removed to another state. *See, e.g., Gen. Motors Acceptance Corp. v. Nuss*, 195 La. 209, 196 So. 323 (1940); *Universal C.I.T. Credit Corp. v. Hulett*, 151 So.2d 705 (La.App. 3 Cir. 1963).

In the present case, FM Bank loaned Southern Structures money for the purchase of various items of new equipment in 2005. The flange unit, which was located in Louisiana, was included among these items. The flange unit, as well as all of the other equipment owned by Southern Structures, was the subject of a Commercial Security Agreement dated December 15, 2005. This granted a UCC security interest to FM Bank over the flange unit and all other equipment owned by Southern Structures. The subsequent relocation of the flange unit from Louisiana to South Carolina does not affect FM Bank's security interest as Louisiana courts have the authority to recognize a lien on property that was in the state when a valid security interest was created. Thus, Nucor's assignment of error is without merit.

**Assignment of Error Number Three**

Nucor contends that the trial court erred when it found that the transaction between MH Precision and Nucor did not occur in the ordinary course of business.

9

Nucor alleges that it was in good faith as a matter of law and that MH Precision dealt with Nucor regarding the sale in the course of its usual or customary business practices. Nucor contends that the trial court's judgment was based on the erroneous conclusion that MH Precision was merely a broker or agent, rather than a seller, in the transaction.

In opposition, FM Bank contends that the transaction was really between Southern Structures and Nucor rather than MH Precision and Nucor. FM Bank contends that the transaction between Southern Structures and Nucor did not occur in the ordinary course of business.

Thus, we must first decide whether the trial court's conclusion that Nucor purchased the flange unit directly from Southern Structures, rather than from MH Precision, was reasonable under the facts of this case. We must then decide whether the trial court erred in finding that the transaction between Southern Structures and Nucor did not occur in the ordinary course of business.

### The Seller of the Flange Unit

The evidence supporting the trial court's ruling that the flange unit was sold directly from Southern Structures to Nucor is based in large part upon the deposition testimony of Lawhern, the owner of MH Precision. Specifically, Lawhern testified that he was initially contacted by Nucor to find it a new flange unit. As a new flange unit eventually proved to be too expensive, Lawhern testified that Nucor asked him to look for a used unit. Lawhern testified that he was contacted by Southern Structures and told that a slightly used flange unit was available for sale, which information he then passed on to Nucor. Lawhern testified that Nucor representatives came to Southern Structures in Broussard, Louisiana, to have the equipment operated in their presence to satisfy themselves

10

that it worked. Lawhern testified that MH Precision was not in the business of fabricating metal products and had no use, in its business, for any of the Southern Structures' equipment.

The record further contains other evidence and witness testimony showing that Nucor was aware that the equipment was owned by Southern Structures, which was no longer in business. There is evidence that the Nucor officials went to lunch with the Southern Structures officials to discuss the possible sale at length. There is evidence showing that the flange unit was shipped directly from Southern Structures to Nucor. Additionally, the evidence indicates that Nucor dealt with Lawhern of MH Precision several times over many years, but always as a broker.

The trial court found that the Nucor representatives were not credible on the issue of whether Nucor knew that Lawhern was acting as a broker rather than a seller. We note that Lawhern testified by video deposition. As such, the trial court was able to view Lawhern while he was testifying as well as the Nucor representatives who testified at trial.

Nucor attempts to overcome this evidence with the fact that the purchase order was on a MH Precision purchase order form. In its reasons for judgment, however, the trial court noted that the purchase order does not list MH Precision as the buyer. The trial court stated that the purchase order merely designated Southern Structures as the seller and Nucor as the delivery destination. The trial court indicated that a buyer was not specified on the purchase order. Additionally, although Huber of Nucor testified that he believed Nucor was buying the flange unit from MH Precision, the trial court specifically found that it did not believe Huber's testimony on that point.

Based on the above evidence, it was reasonable for the trial court to conclude that Southern Structures was the seller and Nucor was the buyer. Accordingly, the trial court's judgment was not manifestly erroneous in this regard.

*Ordinary Course of Business*

Since Southern Structures is the seller, we must decide whether the transaction between Southern Structures and Nucor occurred in the ordinary course of business. In that regard, La.R.S. 10:1-201(9) provides that a "'Buyer in ordinary course of business' means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind."

Louisiana Revised Statutes 10:9-320 defines a buyer of goods, in pertinent part, as:

> (a) **Buyer in ordinary course of business**. Except as otherwise provided in Subsection (e), a buyer in ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence.
>
> (b) **Buyer of consumer goods**. Except as otherwise provided in Subsection (e), a buyer of goods from a person who used or bought the goods for use primarily for personal, family, or household purposes takes free of a security interest, even if perfected, if the buyer buys:
>
> . . . .
>
> (2) for value;
>
> (3) primarily for the buyer's personal, family, or household purposes; and
>
> (4) before the filing of a financing statement covering the goods.

The Uniform Commerical Code Comment, which follows La.R.S. 10:9-320

(emphasis added), provide that:

> 3. **Buyers in Ordinary Course**. Subsection (a) derives from former Section 9-307(1). The definition of "buyer in ordinary course of business" in Section 1-201 restricts its application to buyers "from a person, other than a pawnbroker, in the business of selling goods of that kind." Thus subsection (a) applies primarily to *inventory collateral*. The subsection further excludes from its operation buyers of "farm products" (defined in Section 9-102) from a person engaged in farming operations. The buyer in ordinary course of business is defined as one who buys goods "in good faith, without knowledge that the sale violates the rights of another person and in the ordinary course." Subsection (a) provides that such a buyer takes free of a security interest, even though perfected, and even though the buyer knows the security interest exists. Reading the definition together with the rule of law results in the buyer's taking free if the buyer merely knows that a security interest covers the goods but taking subject if the buyer knows, in addition, that the sale violates a term in an agreement with the secured party.
>
> As did former Section 9-307(1), subsection (a) applies only to security interests created by the seller of the goods to the buyer in ordinary course. However, under certain circumstances a buyer in ordinary course who buys goods that were encumbered with a security interest created by a person other than the seller may take free of the security interest, . . . .

Louisiana Revised Statutes 10:9-102 (48) defines "Inventory as: "goods, other than farm products, which:"

> (A) are leased by a person as lessor;
>
> (B) are held by a person for sale or lease or to be furnished under a contract of service;
>
> (C) are furnished by a person under a contract of service; or
>
> (D) consist of raw materials, work in process, or materials used or consumed in a business.

"Equipment" is defined as "goods other than inventory, farm products, or consumer goods." La.R.S. 10:9-102(33).

Thus, the key distinction in the present case is whether the flange unit is classified as inventory or equipment used in the manufacturing of products. If the flange unit is considered inventory, then it is in Southern Structures' ordinary course of business. If the flange unit is considered equipment used in the manufacturing of products, it is not in Southern Structures' ordinary course of business.

In the present case, witness testimony provides the following evidence. Southern Structures was the seller. Southern Structures was in the business of manufacturing metal components for metal buildings, not manufacturing and/or selling metal fabricating equipment such as the flange unit. Southern Structures eventually went out of business. The flange unit was never an inventory item in Southern Structures business.

The foregoing testimony indicates that the flange unit was not inventory used in the ordinary course of business of Southern Structures. Rather, the flange unit was a specialty piece of equipment used in the manufacturing process that was subject to FM Bank's lien. In addition to the foregoing testimony, there was no evidence presented that the sale was in the ordinary course of the business of Southern Structures. Accordingly, we find that the trial court did not err when it found that the transaction between Southern Structures and Nucor did not occur in the ordinary course of business. Nucor's assignment of error is without merit.

## Alternative Assignment of Error

Since we find that Nucor acted in bad faith, we must consider Nucor's alternative assignment of error. Nucor alleges that there is no supportable finding of any type of intentional tort or willful action on the part of Nucor. As such, the trial court's finding that Nucor was liable in solido with Defendants is error under

14

La.Civ.Code art. 2324(B). Nucor contends that since it was the least culpable, it should only be cast with five to ten percent fault.

Louisiana Civil Code Article 2324 provides, in pertinent part:

> A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
>
> B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

Our review of the record indicates that the trial court found that Nucor conspired with Southern Structures to defraud FM Bank. Nucor's purchase while FM Bank was being kept at bay was not a negligent act. It was intentional. That is what the trial court found, i.e., a conspiracy to commit an unlawful act. In this case, the unlawful act was a sale of equipment with knowledge of a lien against it and without any notification to the bank holding the lien in violation of La.R.S. 14:72.4.[3] Hence, we agree with the trial court's finding of solidary liability.

Accordingly, we find that the trial court did not err in this regard. Nucor's assignment of error is without merit.

## DECREE

The judgment rendered by the trial court is affirmed. All costs of this appeal are assessed against Nucor Building Systems Sales Corporation.

**AFFIRMED.**

---

[3] Louisiana Revised Statutes 14:72.4 is entitled "Disposal of property with fraudulent or malicious intent."

15